# MANCUSI, CORRECTIONAL SUPERINTENDENT
## *v.* STUBBS

No. 71–237.   Argued April 17, 1972—Decided June 26, 1972

Rehnquist, J., delivered the opinion of the Court, in which

BURGER, C. J., and BRENNAN, STEWART, WHITE, BLACKMUN, and POWELL, JJ., joined. MARSHALL, J., filed a dissenting opinion, in Part II of which DOUGLAS, J., joined, *post,* p. 216.

*Maria L. Marcus,* Assistant Attorney General of New York, argued the cause for petitioner. With her on the brief were *Louis J. Lefkowitz,* Attorney General, *Samuel A. Hirshowitz,* First Assistant Attorney General, and *Stanley L. Kantor,* Deputy Assistant Attorney General.

*Bruce K. Carpenter* (for Court appointment of counsel, see 406 U. S. 941) argued the cause and filed a brief for respondent.

*Melvin Bressler* filed a brief for the District Attorney of Monroe County, New York, as *amicus curiae.*

MR. JUSTICE REHNQUIST delivered the opinion of the Court.

Respondent Stubbs was convicted of a felony in a New York State court and sentenced as a second offender under the laws of that State by reason of a prior Tennessee murder conviction obtained in 1964. He thereafter sought federal habeas corpus, claiming that the Tennessee conviction was had in violation of his Sixth and Fourteenth Amendment right to confront witnesses against him, and thus could not be used by New York as the predicate for a stiffer punishment. The District Court denied habeas corpus, but the Court of Appeals reversed, 442 F. 2d 561 (CA2 1971). We granted certiorari, 404 U. S. 1014, and reverse for the reasons hereinafter stated.

I

Prior to our consideration of the merits it is necessary to deal with a suggestion that because petitioner did not seek a stay of the mandate of the Court of Appeals, but rather obeyed it and resentenced Stubbs, this case is therefore moot. The parties agreed at oral argument that Stubbs upon resentencing in New York had received

the same sentence, based upon still another conviction in Texas. However, he was appealing from that sentence on grounds that the Texas conviction was constitutionally infirm, and that appeal has not run its course even through the state courts.

Until it can be said with certainty that the New York courts may validly resentence respondent to the same term as they imposed prior to the decision of the Court of Appeals now under review here, petitioner continues to have an interest in the availability of the Tennessee conviction as a support for second-offender sentencing of respondent. Petitioner's obedience to the mandate of the Court of Appeals and the judgment of the District Court does not moot this case.[1] In *Bakery Drivers* v. *Wagshal,* 333 U. S. 437 (1948), the union appealed from an injunction issued by the United States District Court

---

[1] The dissent states that this case is controlled by *SEC* v. *Medical Committee,* 404 U. S. 403 (1972). In that case, respondent committee had requested Dow Chemical to place the committee's proposed resolution on the proxy statement for the annual meeting of Dow Chemical stockholders. Dow Chemical initially refused the request, and the committee thereupon invoked the aid of the SEC to bring suit against Dow Chemical to compel inclusion of the proposal. The SEC refused to bring suit, and the committee then succeeded in having the agency's refusal set aside by the Court of Appeals. While review of this latter action was pending here, Dow Chemical acceded to the committee's request. The committee thereby accomplished the purpose for which it sought ancillary assistance from the SEC, not because of compliance by the SEC with the judgment under review, but because of the action of Dow Chemical, which was not required to do anything by that judgment.

There would be a rough parallel between our case and *SEC* v. *Medical Committee* if, pending review here of the ruling of the Court of Appeals in favor of Stubbs, the Governor of New York should pardon Stubbs. But, on the facts we have before us now, the mootness issue is controlled by *Bakery Drivers* v. *Wagshal,* 333 U. S. 437 (1948), and *Dakota County* v. *Glidden,* 113 U. S. 222 (1885), rather than by *SEC* v. *Medical Committee.*

on the ground that it had been issued in violation of the provisions of the Norris-LaGuardia Act. Dealing with a "preliminary claim" of mootness in that case, the Court said:

"The claim of mootness is also based on an affidavit stating that after dismissal of the appeal by the Court of Appeals, the union lifted its boycott. Since the record does not show that a stay of the injunction was granted pending action in this Court, we must assume that the union's action was merely obedience to the judgment now here for review. We therefore turn to the merits." 333 U. S., at 442.

Much earlier the Court had stated a similar view of mootness in these circumstances:

"There can be no question that a debtor against whom a judgment for money is recovered may pay that judgment and bring a writ of error to reverse it, and if reversed can recover back his money. And a defendant in an action of ejectment may bring a writ of error, and failing to give a supersedeas bond, may submit to the judgment by giving possession of the land, which he can recover if he reverses the judgment by means of a writ of restitution. In both these cases the defendant has merely submitted to perform the judgment of the court, and has not thereby lost his right to seek a reversal of that judgment by writ of error or appeal." *Dakota County* v. *Glidden,* 113 U. S. 222, 224 (1885).

Under these authorities the case is not moot, and we turn to the merits.

II

In July 1954, respondent was convicted in the Tennessee trial court of murder in the first degree, assault with intent to murder, and two counts of kidnaping.

The jury impaneled for that trial could have concluded from the evidence presented to it that respondent, a few days after his release from a Texas penitentiary in June 1954, kidnaped Mr. and Mrs. Alex Holm and forced them at gunpoint to accompany him in their car. Stubbs drove the car and sat in the front seat, while the Holms sat in the back seat. Mr. Holm testified that somewhere east of Blountville, Tennessee, Stubbs, without saying anything, shot him twice in the head and shot and killed Mrs. Holm. Stubbs then left the car, obtained a ride as a hitchhiker, and was ultimately arrested at a roadblock. At the time of his arrest, Stubbs explained the blood on his clothing as having resulted from his having fallen off a cliff while fishing.

Stubbs took the stand in his own defense, admitted that he had kidnaped the Holms at gunpoint, and that as he drove the Holms' car, with them in the back seat, he at intervals pointed the gun in Mrs. Holm's face. He testified that during the ride he apologized for forcing a ride; that the Holms then assured him they would let him out at Bristol, Tennessee, and would not cause him any trouble; and that he therefore laid the pistol on the front seat of the car. He also testified that near Bristol, Tennessee:

> "It seems awful strange, but everything just seemed to be awful still and I remember a tree and it just seemed to come up just like that in clear focus, but in a reddish haze. I mean there was no pain or nothing. . . . I felt a sharp pain that seem to start in my head and go all the way down through me and I reached up with both hands and I heard this loud roar, bang . . . Stuff started running down my face and down my shirt and all that I could think of that he has got the gun. . . . I just went outside through the car door. . . ."

After that, Stubbs testified, "everything went black."

Nine years after his state court trial for murder, Stubbs sought release on federal habeas corpus from the United States District Court for the Middle District of Tennessee.

He successfully urged upon that court the contention that he had been denied the effective assistance of counsel in this 1954 trial because counsel had been appointed for him only four days before the trial took place. *Stubbs* v. *Bomar,* Civil Action No. 3585 (MD Tenn. 1964). The State of Tennessee then elected to retry him, and did so in 1964. By that time Holm, who had been born in Sweden but had become a naturalized American citizen, had returned to Sweden and taken up permanent residence there. Tennessee issued a subpoena that was sent to Texas authorities in an attempt to serve Holm at his last known United States address. No service having been obtained, the State at trial called Holm's son as a witness and elicited from him the fact that his father now resided in Sweden. Over appropriate objection on constitutional grounds, the Tennessee trial judge then permitted Holm's testimony at the earlier trial to be read to the jury. Stubbs again took the stand, recited his version of the events, and was again convicted. This conviction was in due course affirmed by the Supreme Court of Tennessee. *Stubbs* v. *State,* 216 Tenn. 567, 393 S. W. 2d 150 (1965).

Respondent has challenged the present second-offender sentence that was imposed upon him by the New York courts on the ground that his 1964 conviction upon retrial was constitutionally infirm because he was denied his Sixth and Fourteenth Amendment right to confront the witness Holm. The Court of Appeals sustained this contention, relying on this Court's opinion in *Barber* v. *Page,* 390 U. S. 719 (1968).

In *Barber*, a prospective witness for the prosecution in an Oklahoma felony trial was incarcerated in a federal prison in Texas. The court there said:

"We start with the fact that the State made absolutely no effort to obtain the presence of Woods at trial other than to ascertain that he was in a federal prison outside Oklahoma. It must be acknowledged that various courts and commentators have heretofore assumed that the mere absence of a witness from the jurisdiction was sufficient ground for dispensing with confrontation on the theory that 'it is impossible to compel his attendance, because the process of the trial Court is of no force without the jurisdiction, and the party desiring his testimony is therefore helpless.' 5 Wigmore, Evidence § 1404 (3d ed. 1940).

"Whatever may have been the accuracy of that theory at one time, it is clear that at the present time increased cooperation between the States themselves and between the States and the Federal Government has largely deprived it of any continuing validity in the criminal law. For example, in the case of a prospective witness currently in federal custody, 28 U. S. C. § 2241 (c)(5) gives federal courts the power to issue writs of habeas corpus *ad testificandum* at the request of state prosecutorial authorities. [Citations omitted.] In addition, it is the policy of the United States Bureau of Prisons to permit federal prisoners to testify in state court criminal proceedings pursuant to writs of habeas corpus *ad testificandum* issued out of state courts. . . .

"In this case the state authorities made no effort to avail themselves of either of the above alternative means of seeking to secure Woods' presence at peti-

tioner's trial." (Footnotes omitted.) *Id.,* at 723–724.

Because the State had made no attempt to use one of these methods to obtain the attendance of the witness at trial, the Court reversed the conviction on that ground without considering whether the testimony taken at the preliminary hearing was subject to cross-examination. The Court said:

"Moreover, we would reach the same result on the facts of this case had petitioner's counsel actually cross-examined Woods at the preliminary hearing. See *Motes* v. *United States,* 178 U. S. 458 (1900). The right to confrontation is basically a trial right. It includes both the opportunity to cross-examine and the occasion for the jury to weigh the demeanor of the witness. A preliminary hearing is ordinarily a much less searching exploration into the merits of a case than a trial, simply because its function is the more limited one of determining whether probable cause exists to hold the accused for trial. While there may be some justification for holding that the opportunity for cross-examination of a witness at a preliminary hearing satisfies the demands of the confrontation clause where the witness is shown to be actually unavailable, this is not, as we have pointed out, such a case." 390 U. S., at 725–726.

In this case, of course, Holm was not merely absent from the State of Tennessee; he was a permanent resident of Sweden. Respondent argues that Tennessee might have obtained Holm as a trial witness by attempting to invoke 28 U. S. C. § 1783 (a), which provided as of the time here relevant that:

"A court of the United States may subpoena, *for appearance before it,* a citizen or resident of the

United States who . . . is beyond the jurisdiction of the United States and whose testimony in a criminal proceeding is desired by the Attorney General. . . ." (1958 ed.) (Emphasis supplied.)

We have been cited to no authority applying this section to permit subpoena by a federal court for testimony in a state felony trial, and certainly the statute on its face does not appear to be designed for that purpose.[2]

The Uniform Act to secure the attendance of witnesses from without a State, the availability of federal writs of habeas corpus *ad testificandum,* and the established practice of the United States Bureau of Prisons to honor state writs of habeas corpus *ad testificandum,* all supported the Court's conclusion in *Barber* that the State had not met its obligations to make a good-faith effort to obtain the presence of the witness merely by showing that he was beyond the boundaries of the prosecuting State. There have been, however, no corresponding developments in the area of obtaining witnesses between this country and foreign nations. Upon discovering that Holm resided in a foreign nation, the State of Tennessee, so far as this record shows, was powerless to compel his attendance at the second trial, either through its own process or through established procedures depending on the voluntary assistance of another government. Cf. *People* v. *Trunnell,* 19 Cal. App. 3d 567, 96 Cal. Rptr. 810 (1971). We therefore hold that the predicate of unavailability was sufficiently stronger here than in *Barber* that a federal habeas court was not warranted

---

[2] Stubbs argues that the 1964 amendment to 28 U. S. C. § 1783, authorizing a subpoena to bring a witness "before a person or body designated by" the District Court, sheds a different light on this case. That amendment was not available to the Tennessee authorities for Stubbs' 1964 trial, and therefore we have no occasion to decide whether it would afford assistance to state authorities on the facts represented by this case.

in upsetting the determination of the state trial court as to Holm's unavailability. Before it can be said that Stubbs' constitutional right to confront witnesses was not infringed, however, the adequacy of Holm's examination at the first trial must be taken into consideration.

In addition to *Barber* v. *Page,* recent decisions of this Court that have dealt at some length with the requirements of the Confrontation Clause are *California* v. *Green,* 399 U. S. 149 (1970), and *Dutton* v. *Evans,* 400 U. S. 74 (1970). The focus of the Court's concern has been to insure that there "are indicia of reliability which have been widely viewed as determinative of whether a statement may be placed before the jury though there is no confrontation of the declarant," *Dutton* v. *Evans, supra,* at 89, and to "afford the trier of fact a satisfactory basis for evaluating the truth of the prior statement," *California* v. *Green, supra,* at 161. It is clear from these statements, and from numerous prior decisions of this Court, that even though the witness be unavailable his prior testimony must bear some of these "indicia of reliability" referred to in *Dutton.*

At least since the decision of this Court in *Mattox* v. *United States,* 156 U. S. 237 (1895), prior-recorded testimony has been admissible in appropriate cases. The circumstances surrounding the giving of Alex Holm's testimony at the 1954 trial were significantly more conducive to an assurance of reliability than were those obtaining in *Barber* v. *Page, supra.* The 1954 Tennessee proceeding was a trial of a serious felony on the merits, conducted in a court of record before a jury, rather than before a magistrate.[3] Stubbs was represented by coun-

---

[3] The significant difference between the nature of examination at a preliminary hearing and at a trial on the merits is discussed both in *Barber* v. *Page,* 390 U. S. 719 (1968), and in MR. JUSTICE BRENNAN's dissenting opinion in *California* v. *Green,* 399 U. S. 149, 196–199 (1970).

sel who could and did effectively cross-examine prosecution witnesses.

Stubbs urges that because the 1954 conviction was itself overturned by a federal habeas court on a finding of ineffective assistance of counsel, that court must necessarily have concluded that the cross-examination of Holm conducted by such counsel likewise fell short of constitutional standards. The federal habeas judge in *Stubbs* v. *Bomar, supra,* however, rested his determination on an apparent *per se* rule of ineffective assistance that was conclusively presumed from the short interval between the time of counsel's appointment and the date of the trial. If the habeas court had rendered its decision after our holding in *Chambers* v. *Maroney,* 399 U. S. 42 (1970), which disapproved any such *per se* rule, it might have addressed itself to the effectiveness of the examination of the witness Holm. But it did not in fact do so. When Stubbs appealed his 1964 conviction to the Supreme Court of Tennessee, that court in affirming the judgment expressly determined that the prior cross-examination of Holm had been adequate. *Stubbs* v. *State,* 216 Tenn. 567, 393 S. W. 2d 150 (1965). Whatever might be the case in other circumstances, the State of New York was not bound under any theory of *res judicata* by *Stubbs* v. *Bomar* as to the efficacy of the prior cross-examination of the witness Holm.

Stubbs also contends that even though the prior determination may not be binding upon subsequent review, the fact that counsel was appointed only four days before trial necessarily requires a finding that the cross-examination of Holm was constitutionally inadequate. Counsel for Stubbs at the 1964 trial placed in the record a list of 12 questions not asked of Holm in 1954, which he said he would have asked had the witness been present at the second trial. With one exception these were directed to the events leading up to and surrounding the shooting. Though not asked

*in haec verba* in 1954, they were nonetheless adverted to in the earlier cross-examination. No one defense counsel will ever develop precisely the same lines of inquiry or frame his questions in exactly the words of another, but from this record counsel at the retrial did not in his proffer show any new and significantly material line of cross-examination that was not at least touched upon in the first trial.

The Court of Appeals concluded that the cross-examination had been inadequate. It reached this conclusion, at least in part, because it felt that Holm could have been questioned about whether Stubbs, although originally having kidnaped the Holms at gunpoint, later became in effect their guest. Parts of Stubbs' own testimony presented that version of the events to the jury, and the Second Circuit thought it significant because even if Stubbs fired his pistol accidentally, he might still have been found guilty of felony murder unless the felony of kidnaping had ended. Under this theory, if Stubbs had during the trip been transmogrified from a kidnaper into a guest, at least the argument to the jury as to whether the kidnaping had ended before the shooting would have been strengthened by any support Holm's testimony might have given to this notion.

The Tennessee trial court, however, did not charge that the jury could convict Stubbs of felony murder as a result of a death occurring during a kidnaping. Its charge authorized conviction upon a finding of premeditated murder, or upon a finding of murder during the commission of robbery.[4] The failure to elicit from

---

[4] This was in accord with the Tennessee felony-murder statute which provides:

"Every murder . . . committed in the perpetration of, or attempt to perpetrate, any murder in the first degree, arson, rape, robbery, burglary, or larceny, is murder in the first degree." Tenn. Code Ann. § 39–2402.

Holm his own views as to whether Stubbs had become a guest in the Holm car prior to the time that he turned from the front seat, shot Mr. Holm, and killed Mrs. Holm—however interesting they might have been to hear—could not have prejudiced Stubbs' case as to any issue that the jury was authorized to deliberate under the trial judge's charge.

Since there was an adequate opportunity to cross-examine Holm at the first trial, and counsel for Stubbs availed himself of that opportunity, the transcript of Holm's testimony in the first trial bore sufficient "indicia of reliability" and afforded " 'the trier of fact a satisfactory basis for evaluating the truth of the prior statement,' " *Dutton* v. *Evans,* 400 U. S., at 89. The witness Holm, consistently with the requirement of the Confrontation Clause, could have been and was found by the trial court to be unavailable at the time of the second trial. There was, therefore, no constitutional error in permitting his prior-recorded testimony to be read to the jury at that trial, and no constitutional infirmity in the judgment of conviction resulting from that trial that would prevent the New York courts from considering that conviction in sentencing Stubbs as a second offender. The judgment of the Court of Appeals is therefore

*Reversed.*

Mr. Justice Marshall, dissenting.

I

I would dismiss the writ in this case as improvidently granted. The question presented to the courts below concerns the constitutional validity of a 1964 Tennessee conviction. The New York courts had relied on that conviction to sentence respondent as a multiple offender, after his conviction in 1966 for a New York offense. It was conceded at oral argument, however, that New York has no present interest whatever in

that Tennessee conviction. For, after the United States Court of Appeals held that it was constitutionally defective, New York substituted for the Tennessee conviction an earlier Texas conviction, and reinstated precisely the same enhanced sentence it had previously imposed.[1]

In determining that this case is nevertheless appropriate for adjudication here, the Court seems to rely on two separate factors. First, it reasons that the event that seems to moot the case—the resentencing—was merely the State's obedience to the adverse judgment below, and for that reason cannot moot the controversy. And, second, it reasons that the resentencing may prove to be defective as a matter of law, that New York may in the future wish to rely on the Tennessee conviction again, if the Texas conviction should prove to have defects of its own.

The first proposition falls wide of the mark in this case. It is well established that an unsuccessful litigant does not moot his case by complying with an unfavorable judgment pending the disposition of his appeal. Thus, a debtor does not moot his case by paying the judgment against him *pendente lite*. *Dakota County* v. *Glidden,* 113 U. S. 222 (1885). And if a union is enjoined from boycotting or striking at a particular store, the union does not moot the case by lifting the boycott or strike *pendente lite*. *Bakery Drivers* v. *Wag-*

---

[1] Under the then-applicable New York sentencing statute, former N. Y. Penal Law § 1941, one prior conviction was sufficient to trigger the recidivist sentencing provisions, and Stubbs received the maximum authorized recidivist sentence. New York has subsequently amended its law to increase the maximum recidivist sentence, and to provide that two prior convictions are necessary to trigger the recidivist statute, N. Y. Penal Law § 70.10. The new provisions do not, however, apply to this case, because the underlying New York conviction here was obtained before the effective date of the new statute. N. Y. Penal Law § 5.05.

*shal,* 333 U. S. 437 (1948). But that principle does not protect the unsuccessful litigant who goes beyond what is required of him, and obtains relief in some way not prohibited by the judgment against him. Thus, the debtor *does* moot his case by entering into a compromise in settlement of the debt. *Dakota County* v. *Glidden,* 113 U. S., at 224–227. And the union might well moot its case if all the striking employees left the store and obtained other employment elsewhere.

This case would come within the principle of *Dakota County* and *Bakery Drivers,* if New York had simply abandoned, temporarily, its attempt to impose an enhanced recidivist sentence, pending review of the judgment below. But New York did more than merely submit to the decision below; it found a complete substitute for the result it had sought in the Court of Appeals, and the result it continues to seek here.[2] By reversing the judgment below, this Court gives New York no relief it has not already obtained.

The Court offers a second reason to disregard the resentencing in this case, however, and that reason is perhaps independent of the first. The Court argues that the Texas conviction, and the resentencing based on it, may be found invalid in other proceedings, in which case New York may wish to revive its interest in the Tennessee conviction. Thus, the argument rests on the Court's estimate that the controversy that gave

---

[2] The Court seeks to distinguish *SEC* v. *Medical Committee,* 404 U. S. 403 (1972), on the ground that in that case the action relied on to moot the case was taken by a third party rather than by a litigant. I can see no relevant difference, however, between the action of a third party, and the action of a litigant which goes beyond mere *pendente lite* compliance with the court order, so long as that action gives the litigant the relief he seeks. If burning down a building will moot a case, surely that is so whether the fire is set by a litigant or a lightning bolt, though the litigant may, of course, be subject to sanctions quite apart from the case he has rendered moot.

rise to this litigation has a substantial probability of recurring. That analysis might in my view carry considerable weight, if it were applied uniformly in all cases. But this Court has regularly refused to adjudicate the claims of litigants who argue that illegal action will probably harm them in the future. *E. g., Socialist Labor Party* v. *Gilligan,* 406 U. S. 583 (1972); *SEC* v. *Medical Committee,* 404 U. S. 403 (1972).[3] Moreover, in this case the Court can find that the controversy will probably recur only by presuming that the Texas conviction is probably invalid. Such a presumption flies in the face of the principle that state convictions are ordinarily presumed valid.[4] The Court betrays a surprising lack of confidence in the criminal processes of our States, for which there is no warrant in this record.

In these circumstances, the possibility that this controversy will be revived is too remote and speculative to keep the case alive under established precedents. It is certainly too remote and speculative to warrant invoking the discretionary certiorari jurisdiction of this Court.

## II

Because the Court reaches out to decide the merits of this case, I think it appropriate to state my views on that subject as well.

---

[3] Indeed, the claim we rejected in *SEC* is closely analogous to the claim here. In each case, events subsequent to the decision below removed the occasion for present conflict between the parties, but it was alleged that within a short time the conflict could be expected to recur. In *SEC,* the Court found that allegation too speculative to keep the controversy alive.

[4] Even when an appeal is pending, see, *e. g., Bloch* v. *United States,* 226 F. 2d 185, 188 (CA9 1955), cert. denied, 350 U. S. 948 (1956); *United States* v. *Empire Packing Co.,* 174 F. 2d 16, 20 (CA7), cert. denied, 337 U. S. 959 (1949); Proposed Rules of Evidence for the United States District Courts § 609 (e) (1972), and Advisory Committee's Note.

Respondent was convicted of murder in Tennessee after a trial in which the principal prosecution witness, one Alex Holm, did not appear. Instead, Holm's testimony was introduced through a transcript of a previous trial on the same charge. The State made absolutely no effort to secure Holm's presence at the second trial, relying wholly on the claim that Holm was unavailable because he had become a resident of Sweden. The Court today concludes that the State did not thereby deny Stubbs his right "to be confronted with the witnesses against him," guaranteed by the Sixth and Fourteenth Amendments. To reach that result, the Court necessarily distinguishes our holding in *Barber* v. *Page,* 390 U. S. 719 (1968), on untenable grounds, and utterly ignores its rationale.

In *Barber* v. *Page,* the petitioner had been convicted on the basis of testimony introduced through a transcript of a preliminary hearing. The witness in question was incarcerated in a federal prison. We held that the State could not, consistent with constitutional requirements, use that transcript in lieu of the witness himself unless two conditions were met: (1) the witness was shown to be actually unavailable to testify at trial, and (2) the witness had been adequately confronted and cross-examined at the prior hearing. In *Barber* we concluded that neither condition had been met; the State had failed to make a good-faith effort to secure the presence of the witness at trial, and hence it could not be said that the witness was unavailable; moreover, the preliminary hearing did not afford an adequate pretrial opportunity for confrontation and cross-examination.

The Court purports to apply the two-part test of *Barber* to the facts of this case. It devotes considerable space to the second part of the test, analyzing the opportunity for confrontation and cross-examination of Holm at the first trial of Stubbs, and concluding that the

opportunity there was significantly greater than at the preliminary hearing in *Barber*. The Court's distinction for this purpose between a preliminary hearing and a prior trial is tenable, in my view, although on the peculiar facts of this case the Court's conclusion is somewhat troublesome. But the Court fails totally to explain how the first part of the *Barber* test is satisfied here. On that question, the Court has only this to say: "the predicate of unavailability was sufficiently stronger here than in *Barber* that a federal habeas court was not warranted in upsetting the determination of the state trial court as to Holm's unavailability."

The difficulty with that position is that there never has been any factual inquiry resulting in a determination as to Holm's unavailability. Rather, the courts have consistently presumed his unavailability from the bare fact that he lives in Sweden. The Tennessee Supreme Court thought it was enough that Holm was out of the jurisdiction of the United States, beyond the reach of compulsory process, *Stubbs* v. *State*, 216 Tenn. 567, 574–575, 393 S. W. 2d 150, 153–154 (1965), as did the dissenting judge in the United States Court of Appeals, 442 F. 2d 561, 565 (1971). Apparently this Court takes the same view. But in *Barber* v. *Page* we squarely rejected any such presumption of unavailability. In that case, the claim was made that the court had no power to compel the absent witness to appear. We held that nevertheless the State was obliged to make a good-faith effort to secure his appearance, for " 'the possibility of a refusal is not the equivalent of asking and receiving a rebuff.' " 390 U. S., at 724, quoting the decision below, 381 F. 2d 479, 481 (CA10 1966) (Aldrich, J., dissenting). As we said in *Barber*:

> "In short, a witness is not 'unavailable' for purposes of the foregoing exception to the confrontation requirement unless the prosecutorial authori-

ties have made a good-faith effort to obtain his presence at trial." 390 U. S., at 724–725.

The Court seeks to distinguish *Barber* on the ground that in that case the absent witness was a federal prisoner, and while the State had no power to compel his appearance, it could at least have sought the cooperation of the federal prison authorities who did have such power. Here, on the other hand, the absent witness was a resident of a foreign nation, and hence it is argued that even federal authorities would have no power to help. In support of that analysis, the Court seems to place substantial reliance on the fact that at the time of Stubbs' trial, the federal courts had statutory power to subpoena American citizens living abroad, but that power was apparently available only to compel their appearance before federal courts. Act of June 25, 1948, c. 646, 62 Stat. 949, 28 U. S. C. § 1783 (1958 ed.). If the Court's decision today does in fact rest on the lack of federal power to compel the appearance of Holm at a state trial, then the holding in this case is of very limited significance. For less than three months after the trial of Stubbs, Congress amended § 1783 to provide:

> "A court of the United States may order the issuance of a subpoena requiring the appearance as a witness before it, *or before a person or body designated by it,* of a national or resident of the United States who is in a foreign country . . . ." Act of Oct. 3, 1964, Pub. L. No. 88–619, § 10 (a), 78 Stat. 997 (emphasis added).

Since October 3, 1964, then, it appears that the federal courts have had the power to assist state courts in securing the presence of witnesses like Alex Holm, and hence for trials occurring since that date, *Barber* would seem to control.

I cannot agree, however, that if neither state nor federal authorities had the power to compel Holm's appearance, that fact relieved the State of its obligation to make a good-faith effort to secure his presence. It simply reduced the likelihood that any effort would succeed. The State's obligation would hardly be framed in terms of "good-faith effort" if that effort were required only in circumstances where success was guaranteed. If, as the Court contends, it is more difficult to produce at trial a resident of Sweden than a federal prisoner, that fact might justify a failure to produce the witness; it cannot justify a failure even to try. At a minimum, the State could have notified Mr. Holm that the trial was scheduled, and invited him to come at his own expense. Beyond that, it could have offered to pay his expenses. Finally, it could have sought federal assistance in invoking the cooperation of Swedish authorities, as a matter of international comity.

As in *Barber,* "so far as this record reveals, the sole reason why [the witness] was not present to testify in person was because the State did not attempt to seek his presence. The right of confrontation may not be dispensed with so lightly." 390 U. S., at 725.

I respectfully dissent.

MR. JUSTICE DOUGLAS joins in Part II of this opinion.