UNITED STATES of America, Plaintiff,

v.

**Joseph H. HANS, Defendant.**

**No. CR2–80–21.**

United States District Court,
S. D. Ohio, E. D.

Sept. 23, 1980.

Patrick J. Hanley, Christopher K. Barnes, Asst. U. S. Attys., Columbus, Ohio, for plaintiff.

Joseph H. Hans, pro se.

## OPINION AND ORDER

KINNEARY, District Judge.

This matter is before the Court on its own motion to consider the United States' proposal to present a certain classification of evidence in the trial of this case.

The defendant Joseph Hans was indicted on April 8, 1980 for violating 26 U.S.C. §§ 7201 and 7206(1). The trial before a jury commenced on September 8, 1980 with the United States' presentation of its case. In seeking to establish that the defendant failed to report a substantial amount of his earned income for the years 1973 and 1974, the United States relies on two key sources. First, it relies on copies of ledger sheets owned by the defendant and purportedly used by him to record his income earned from fees received from Workmen's Compensation clients in 1973 and 1974.[1] Secondly, the government presented approximately sixty live witnesses who were a small portion of the defendant's total Workmen's Compensation clients. On the United States' direct examination the witnesses generally testified that the defendant represented them in their Workmen's Compensation claims; that they received award checks from the Ohio Bureau of Workmen's Compensation [OBWC]; and, that they paid approximately one–third of their awards to the defendant for legal services. In almost every instance, the government introduced into evidence the award checks, properly identified by the witness as the one issued by the OBWC and bearing the endorsements of the witness and of the defendant or his representative.

---

1. The United States introduced these copies of the defendant's ledger sheets through the testimony of Phyllis Kunkler, a former associate of the defendant's practice. Among other things, Mrs. Kunkler identified the ledger sheets as the defendant's. However, she also testified that she did not understand the contents of the ledger sheets or know the purpose for which the defendant used them. There has been no testimony to date to support the United States' assertion in its memorandum that "these ledgers are an accurate reflection of the *income earned* by the defendant from industrial or B.W.C. cases during the years in question." [Emphasis added.]

To support his own position, the defendant on *pro se* cross examination of these sixty witnesses was able to elicit favorable testimony. A substantial number of the witnesses, as the defendant's former clients, recalled that out of the amount they paid the defendant for attorney fees, he paid for their various medical and litigation expenses. Moreover, these witnesses generally testified that they had no knowledge of the extent to which either the defendant or other associates from his law firm worked on their particular case. The inference the defendant wishes for the jury to draw from this is that only a portion of the total attorney fees constituted his personally earned income.

After presenting these sixty witnesses, the United States, at the trial and in its memorandum of September 16, 1980, submitted to the Court its proposal concerning the introduction of a certain classification of evidence. The essence of the proposal is that in addition to presenting the sixty witnesses, the United States plans to introduce, without live testimony, approximately one hundred eighty additional checks issued by the OBWC to the other Workmen's Compensation clients of the defendant for the years 1973 and 1974.[2] The checks are allegedly endorsed by the clients and by the defendant.

In its memorandum, the United States asserts that the checks essentially speak for themselves and allow an inference consistent with the testimony of the preceding sixty witnesses as to the defendant's fee. The United States contends that substituting the live testimony of these one hundred eighty clients with the checks issued to them will serve the same ends in the presentation of its case without prejudicing the defendant and burdening the trial with additional testimony.

■ The defendant objected to the proposal claiming that he will be denied his Sixth Amendment right to confront and cross–examine the recipients of the additional one hundred eighty checks in the same fashion as he cross–examined the preceding sixty live witnesses.

The Court held a hearing on this matter outside the presence of the jury on September 17, 1980. At the hearing, the above stated facts were reviewed and the Court instructed the parties that following the United States' immediate presentation of its other evidence, the trial would be adjourned until September 29, 1980. The Court further instructed the United States to make a good faith effort, during the interim, to locate the witnesses to these one hundred eighty checks[3] and either present them at the trial following adjournment or to report to the Court when the hearing is reconvened on September 29, 1980 and account for their unavailability. The Court

2. These additional OBWC checks were authenticated by two custodians from the OBWC who further testified that they, together with the checks issued to the sixty live witnesses, constitute the gross amount paid out by OBWC in 1973 and 1974 to all the claimants who were represented by the defendant.

3. The Court notes that at the hearing, counsel for the United States revealed that, to date, no effort had been made to locate or procure these witnesses:

THE COURT: Mr. Hanley, do you understand that the Court is instructing the government to bring into this courtroom as many of these witnesses–I believe you mentioned the figure of 180 separate cases in which the government claims that the defendant received fees?
MR. HANLEY: Yes, your Honor.
THE COURT: What can you do about that?

MR. HANLEY: I will make every effort that can be made to try and find these people.
THE COURT: Have you done that before this time?
MR. HANLEY: To try and find them for this trial?
THE COURT: Yes.
MR. HANLEY: No, your Honor, we have not.
THE COURT: What method of selection did you use to decide which live witnesses you would bring in and what testimony you would produce by linking the check with the ledger entry of the defendant?
MR. HANLEY: Your Honor, there wasn't any particular method that was used. There were probably more people who did appear in the Grand Jury, but we felt that the documents speak for themselves, and we didn't feel that we would burden the trial by bringing in 300 witnesses which we don't feel are necessary.

instructed the parties that it would, at that time, rule on the merits of the United States' proposal.

This written order is filed pursuant to the Court's bench order at the hearing, and explains the Court's rationale for its instructions.

In support of its proposal, the United States argued in its memorandum that

The BWC checks are documents that have been properly identified by custodians from the BWC. Moreover, they bear a clear indicia of reliability and fall within an exception to the hearsay rule (Rule 803(6) and 803(8) Federal Rules of Evidence). The witness introducing these checks appeared in court and the defendant had his opportunity to cross-examine this witness.

Stated simply, the United States in this case is relying on the defendant's ledgers to show what gross receipts were earned from this source in 1973 and 1974. There simply is no issue of confrontation present.

■ While the Workmen's Compensation checks are technically admissible in the absence of a declarant by operation of Rules 803(6) and 803(8) of the Federal Rules of Evidence, the United States is seeking to prove more than the mere receipt of the compensation checks by the claimants. Rather, the United States apparently will use the checks and the endorsements thereon to prove that a specified proportion of each check constituted earned income of the defendant as compensation for legal services to the claimants.

The admission of any single check might not be so prejudicial to defendant as to cause a deprivation of his Sixth Amendment right to confront the witnesses against him.[4] Nevertheless, the Court con-

cludes that the cumulative effect of putting before the jury approximately one hundred eighty checks, for which there would be no testimony concerning actual fee arrangements and payments, would violate the confrontation clause. The potential for violation is especially grave in that the United States wishes the jury to infer from each check and its endorsements that the particular claimant, in fact, paid defendant one-third of the proceeds as compensation for legal services rendered solely by defendant.[5]

■ In a recent case, the Supreme Court delineated the ways in which the confrontation clause restricts the use of hearsay evidence in criminal trials. *Ohio v. Roberts,* —— U.S. ——, 100 S.Ct. 2531, 65 L.Ed. 2d 597 (1980). Although the United States proposes to introduce documentary evidence, the principles enunciated in *Roberts* are relevant. The documentary evidence is a substitute for testimony by the Workmen's Compensation claimants or their representatives as to the claimants' fee arrangements with and payments to the defendant. The values protected by the confrontation clause are threatened in that such evidence would be admitted without affording the defendant the same opportunity for cross-examination that he was provided with the preceding sixty witnesses.

■ Under the first part of the two-step analysis in *Roberts,* the confrontation clause is viewed as a rule of necessity under which "the prosecution must either produce or demonstrate the unavailability of the declarant whose statement it wishes to use against the defendant." *Id.* at ——, 100 S.Ct. at 2538. It is only when the witness is shown to be unavailable that the second aspect of the confrontation clause becomes operative. The Court's concern is the trustworthiness of the hearsay testimony:

---

4. The Sixth Amendment's confrontation clause provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him."

5. The Court acknowledges that the United States might assert that the checks are being proffered to prove only that clients of the defendant received Workmen's Compensation

awards in the years in question. But then the Court is of the opinion that the prejudicial effect of the admission of the checks (i. e., the impermissible inferences the jury could draw from evidence that is essentially testimonial and that is not subject to cross-examination) substantially outweighs their probative value.

The focus of the Court's concern has been to insure that there 'are indicia of reliability which have been widely viewed as determinative of whether a statement may be placed before the jury though there is no confrontation of the declarant,' *Dutton v. Evans, supra* [400 U.S.] at 89 [91 S.Ct. 210 at 219, 27 L.Ed. 213], and to 'afford the trier of fact a satisfactory basis for evaluating the truth of the prior statement,' *California v. Green, supra,* [399 U.S.] at 161 [90 S.Ct. 1930 at 1936, 26 L.Ed.2d 489]. It is clear from these statements, and from numerous prior decisions of this Court, that even though the witness be unavailable his prior testimony must bear some of these 'indicia of reliability.'

*Id.,* citing *Mancusi v. Stubbs,* 408 U.S. 204, 213, 92 S.Ct. 2308, 2313, 33 L.Ed.2d 293 (1972).

At this stage of the trial, the concern of the Court is the availability or non–availability of the Workmen's Compensation clients or their representatives. Accordingly, the Court reiterates its order rendered from the bench on September 17, 1980 and ORDERS the United States to be prepared by September 29, 1980 to present these witnesses or to submit a memorandum explaining the reason(s) for their unavailability,[6] unless it elects to forego introduction of the Workmen's Compensation checks.

IT IS SO ORDERED.

**6.** The Court instructs the United States to prepare said memorandum in light of the Supreme Court's explanation of the prosecution's burden in establishing witness unavailability. *See, Ohio v. Roberts,* - U.S. at · -, 100 S.Ct. at 2544.