■ The People of the State of New York, Respondent, v William McDowell, Appellant. — Judgment of the Supreme Court, New York County (Galligan, J.), rendered January 5, 1981 convicting defendant of the crime of robbery in the first degree and sentencing him to a term of imprisonment, execution of which has been stayed pending determination of this appeal, reversed, on the law, and the matter remanded for a new trial. Defendant was convicted of robbery in the first degree after a jury trial. The circumstances of the robbery are rather bizarre. We need not concern ourselves with them other than to note that, German, the complainant, was a member of the Armed Forces then, or shortly thereafter, on shipping orders to Frankfurt, Germany, in the course of his regular military duties. His tour of duty was to be for 18 months. Because the prosecutor feared that German would not be within the jurisdiction of the court at the time of trial he applied for, and over the vigorous opposition of defense counsel, obtained permission to examine German conditionally (CPL 660.10 *et seq.*). In accordance with CPL 660.40 (subd 2), the examination was recorded on videotape in addition to being recorded stenographically. At the trial German's conditional examination was offered and received, again over defendant's objection. The Criminal Procedure Law provides that a conditional examination, otherwise admissible, may be read in evidence at a subsequent proceeding if "the witness is unable to attend the same by reason of death, illness or incapacity, or cannot with due diligence be found, or is outside the state or in federal custody and cannot with due diligence be brought before the court". (CPL 670.10, subd 1.) While it is not disputed that German was on foreign soil at the time of the trial, there is no indication that the prosecution had made any endeavor whatsoever to produce him. The Army had co-operated with the prosecution in the taking of the conditional examination. German was scheduled to ship out on May 19, 1980. The prosecution contacted the Army shortly before that date to arrange for the conditional examination. German was then rerouted and given a three-day pass which, with the consent of the Army, took him beyond the date fixed in his shipping orders, so that the examination could be had. There is no indication that it would have been less co-operative had his return been sought for the trial. At the very least, it was incumbent upon the prosecution to make a good faith and diligent effort to obtain his presence. In the absence of a showing that such an endeavor was made it cannot be said that German could not "with due diligence be brought before the court". In holding as we do we find it unnecessary to pass upon the constitutional issue of confrontation pressed upon us by defendant. Concur — Sandler, J. P., Bloom, Fein and Milonas, JJ.

Lupiano, J., dissents in a memorandum as follows: The critical issue is perceived by this court to be whether the introduction of the complainant German's pretrial conditional examination violated defendant's constitutional right of confrontation. It is not disputed that German at the time of trial was a member of the United States Armed Forces stationed in Frankfurt, Germany, and that he was not due to return to the United States until October, 1981, more than a year after the trial. The trial court found German to be not presently available and permitted the introduction of the complainant's pre-

trial conditional examination. Having demonstrated that German was residing at the time of trial in a foreign Nation and that he was beyond the compulsory process powers of the State, the People established his "unavailability." Defendant contends that, notwithstanding, German's overseas military assignment, the People were required to show more, namely, that they had made further efforts to secure this witness' presence at trial. The majority agree, noting that the Army had co-operated with the prosecution in the taking of the conditional examination, as follows: "(t)he prosecution contacted the Army shortly before [the] date [German was scheduled to ship out] to arrange for the conditional examination. German was then rerouted and given a three-day pass which, with the consent of the Army, took him beyond the date fixed in his shipping orders, so that the examination could be had." Speculating by implication that the Army might be equally as co-operative in returning German for the trial, the majority fault the People for not endeavoring to secure that co-operation and thus conclude that the People did not establish the required predicate of unavailability. I do not agree. "The Confrontation Clause operates in two separate ways to restrict the range of admissible hearsay. First, in conformance with the Framers' preference for face-to-face accusation, the Sixth Amendment establishes a rule of necessity. In the usual case (including cases where prior cross-examination has occurred), the prosecution must either produce, or demonstrate the unavailability of, the declarant whose statement it wishes to use against the defendant * * * The second aspect operates once a witness is shown to be unavailable. Reflecting its underlying purpose to augment accuracy in the factfinding process by ensuring the defendant an effective means to test adverse evidence, the Clause countenances only hearsay marked with such trustworthiness that 'there is no material departure from the reason of the general rule.' *Snyder* v. *Massachusetts,* 291 U. S., at 107" (*Ohio v Roberts,* 448 US 56, 65). Regarding the first way, the lengths to which the prosecutor must go to satisfy the burden of demonstrating the witness' unavailability is a "question of reasonableness" (*California v Green,* 399 US 149, 189, n 22). In view of the fact that the complainant was, at the time of trial, a member of the Armed Forces stationed in a foreign Nation, the predicate of unavailability appears to be sufficiently strong in this case (see *Mancusi v Stubbs,* 408 US 204). Indeed the United States Supreme Court in *Mancusi* (*supra*), which involved the determination of a *State* trial court as to the unavailability of a witness, held that a witness was properly found unavailable upon a showing that such witness, a United States citizen, was living abroad. There was no requirement imposed on the prosecutor to demonstrate in addition to these facts that an effort was made to secure the witness' return (cf. Marshall, J., dissenting, 408 US, *supra,* at p 223). Before it can be said that defendant's constitutional right to confront witnesses was not infringed, however, the second aspect alluded to above must be considered, to wit, "the mission of the Confrontation Clause * * * to advance a practical concern for the accuracy of the truth-determining process in criminal trials by assuring that 'the trier of fact [has] a satisfactory basis for evaluating the truth of the prior statement.' *California* v. *Green,* 399 U. S., at 161" (*Dutton v Evans,* 400 US 74, 89). "The focus * * * has been to insure that there 'are indicia of reliability which have been widely viewed as determinative of whether a statement may be placed before the jury though there is no confrontation of the declarant'" (*Mancusi v Stubbs, supra,* at p 213). The conditional examination of the complainant was recorded on videotape in addition to being recorded stenographically. The examination was conducted before a Judge, in open court, and the witness was under oath. Defense counsel had the opportunity to prepare for the examination, the defendant was present

and defense counsel extensively cross-examined the witness. It is beyond dispute that defendant had an adequate opportunity to cross-examine the complainant German, and that he took advantage of that opportunity. Recognizing that the conditional examination was intended for introduction into evidence at trial, defendant thoroughly and effectively subjected German to cross-examination and re-cross-examination. This cross-examination occupies 68 pages of the 134-page transcript, fully one half of German's testimony. The circumstances, character and high reliability of this pretrial testimony serve as indicia of reliability sufficient to satisfy the second aspect of the confrontation clause. To reiterate, German's conditional examination took place in the formal setting of open court, under oath and in the presence of a Judge and, significantly, in the presence of defendant. Literally speaking, defendant was confronted by his accuser. Since German's testimony was preserved on videotape, the jury had an opportunity to observe and judge his demeanor while on the stand. Videotaping is, as this court has previously noted, "the most advanced electronic technique used for such purpose. It has been sanctioned where the procedure to be followed assures the accuracy and integrity of the record" (*Bichler v Lilly & Co.,* 50 AD2d 90, 92). Relevant to the issue of whether the admission of videotape testimony was improper as not providing an adequate opportunity to observe demeanor, it has been aptly observed that "a photographic or electronic presentation is not a perfect substitute for live testimony on the witness stand. But confrontation does not require perfect presentation and availability of demeanor evidence to the trier of fact; the loss of some demeanor evidence that would have been relevant to resolving questions of credibility does not violate confrontation rights. 399 U.S. at 160, 90 S.Ct. 1930. Appellants further argue that videotape presentation is also defective because the picture portrays only the witness and not counsel. Constitutional interests are served, however, by a somewhat narrower scope of vision. The Court reasoned in *Green* that one of the objectives of confrontation is to permit the jury deciding a defendant's fate 'to observe the demeanor of the *witness* in making his statement, thus aiding the jury in assessing his credibility.' *Id.* at 158, 90 S.Ct. at 1935 (emphasis added). Finally, we note that evidence presented in the form of a stenographic transcript and a videotape cannot be any less helpful in enabling a jury to assess credibility than a bare transcript alone, read by the prosecutor" (*United States v King,* 552 F2d 833, 841, cert den 430 US 966). Defendant on this record was in no meaningful way disadvantaged by the use at trial of the conditional examination. Again, it must be noted that the complainant's unavailability by virtue of duty with the United States military forces in Germany was demonstrated and that defendant's argument that a showing by the prosecutor of an attempt to have the military change its orders so as to permit complainant's presence at trial was also required is without merit (see *Mancusi v Stubbs, supra;* see, also, *State v Allen,* 94 Wash 2d 860 [*en banc*]). As Mr. Justice Stewart perspicaciously noted in *Dutton v Evans* (*supra,* at pp 89-90) concerning the confrontation clause — "in *Snyder* v. *Massachusetts,* 291 U. S. 97, Mr. Justice Cardozo wrote an opinion for this Court refusing to set aside a state criminal conviction because of the claimed denial of the right of confrontation. The closing words of that opinion are worth repeating here: 'There is danger that the criminal law will be brought into contempt — that discredit will even touch the great immunities assured by the Fourteenth Amendment — if gossamer possibilities of prejudice to a defendant are to nullify a sentence pronounced by a court of competent jurisdiction in obedience to local law, and set the guilty free.' 291 U. S., at 122." We turn now to defendant's remaining contentions. Defendant argues that he was prejudiced by the fact that German wore his Army uniform

during the videotaped examination and that this injury was compounded when the court permitted the videotape to be replayed during jury deliberations. German is a private in the volunteer Army, a position that does not, as a general proposition, attached to itself awe or automatic credibility. Assuming complainant German did not testify in uniform, the jury would learn he was in the Army on direct examination.[*] German's appearance as a soldier is balanced by defendant's testimony of his own Army tours. In any event, there were adequate methods available to defendant to counter any hypothetical prejudice arising from complainant's military dress. First, defendant had opportunity to conduct a careful *voir dire* during jury selection, designed to screen out any jurors who would feel that German's credibility was enhanced by his being a soldier. Second, defendant could have requested instructions, similar to those given in cases involving police witnesses, cautioning the jury in their evaluation of such witnesses' credibility. Despite the absence of such request, the trial court instructed the jury at length on how to evaluate the credibility of witnesses. During deliberations, the jury requested to hear German's testimony after leaving the scene of the crime. The trial court permitted the relevant brief portion of the videotape to be replayed. Replaying such section did not prejudice the defendant by making complainant's testimony more prominent. The videotape subjected German's testimony to greater scrutiny, a process which equally could reinforce a negative as well as positive perception of German's credibility. The trial court acted within its discretion by providing the requested section of the videotape. While the prosecutor erred in an isolated instance in asking defendant if he sold drugs at the 42nd Street shoeshine stand to which defendant replied negatively, the prosecutor did not pursue the matter further and did not refer to it on summation. This error is harmless. Defendant also argues that the prosecutor erred in summation when he pointed to the defendant's failure to call any witnesses other than the owner of the shoeshine stand. Once a defendant testifies, "his failure to call an available witness who is under defendant's control and has information material to the case may be brought to the jurors' attention for their consideration" (*People v Rodriguez,* 38 NY2d 95, 98). Although the "street people" present at the time of the incident were generally known to defendant, it is questionable whether they were in his control. However, while the prosecutor's statement may have been improper, the trial court immediately and repeatedly instructed the jury that the burden of proof remains with the People. Indeed, the prosecutor instantaneously indorsed the trial court's proper instruction by informing the jury that the People were not suggesting that the burden of proof shifted to the defense. He acknowledged that the People bear that burden. Apart from the curative instructions given by the trial court at this point in the People's summation, the court in its subsequent charge to the jury reiterated that the burden of proof remains with the People and the defendant is under no obligation to present any evidence. Accordingly, in light of all these circumstances and, significantly, the acknowledgment by the prosecutor, on summation, of the propriety of the trial court's curative instruction and the absence of an extended endeavor by the prosecutor to ignore such instructions by repeated reference to the defendant's failure to call such "street people," the error is harmless (cf. *People v Cwikla,* 45 AD2d 584). The judgment of the Supreme Court, New York County (Galligan, J.), rendered January 5, 1981, convicting defendant, after a jury trial, of robbery in the first degree, should be affirmed.

---

[*] The fact that German was in the Army is far more than mere background testimony, but is an integral part of the "story" of the crime.