I must respectfully dissent from the majority's holding that the Sixth Amendment to the Constitution of the United States prohibits the admission of the preliminary-hearing testimony of the State's absent witness, Billy Williams. The application of clear precedent of the Supreme Court of the United States establishes that the testimony of this absent witness is admissible. The State presented sufficient evidence to show that it had made a good faith effort to secure the absent witness for trial, and the witness's preliminary hearing testimony is marked with indicia of trustworthiness.
The Confrontation Clause of the Sixth Amendment provides:
 "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him. . . ."
U.S. Const. amend. VI. The Supreme Court has held that the Confrontation Clause applies to the States through the Due Process Clause of the Fourteenth Amendment to the Constitution of the United States.[1] Pointer *Page 135 v. Texas, 380 U.S. 400, 403-05, 85 S.Ct. 1065, 13 L.Ed.2d 923
(1965).
 I. The Ohio v. Roberts Standard
In Ohio v. Roberts, 448 U.S. 56, 63-64, 100 S.Ct. 2531,65 L.Ed.2d 597 (1980), the Supreme Court held that the Confrontation Clause establishes a rule of admission of evidence by "necessity" that accommodates the interests embodied in the "centuries old" rule against admitting hearsay evidence and that rule's traditional exceptions.[2] Both the Confrontation Clause and the hearsay rule advance the interest of the criminal defendant not to be incriminated by evidence untested in the crucible adversarial of cross-examination. Id. at 63, 100 S.Ct. 2531
(citing Douglas v. Alabama, 380 U.S. 415, 85 S.Ct. 1074,13 L.Ed.2d 934 (1965)). Both the Confrontation Clause and the hearsay rule also advance the interests of the People "in effective law enforcement, and in the development and precise formulation of the rules of evidence applicable in criminal proceedings." Id. at 64, 100 S.Ct. 2531. Thus, both the Confrontation Clause and the hearsay rule balance the "competing interests" of the criminal defendant and the People in determining whether prior statements by an absent witness may be admissible in a criminal trial. Id. at 64, 100 S.Ct. 2531 ("This Court, in a series of cases, has sought to accommodate these competing interests.").
In Roberts, 448 U.S. at 65, 100 S.Ct. 2531, the Supreme Court struck the balance between the competing interests of the criminal defendant and the People by framing a two-pronged test for the admissibility of out-of-court statements made in judicial proceedings by a witness who is subsequently absent from the trial. First, the prosecution must show that the witness who made the out-of-court statement is unavailable for trial despite good-faith efforts to locate and present that witness. Id. at 65, 74, 100 S.Ct. 2531. Accord Barber v. Page, 390 U.S. 719, 724-25,88 S.Ct. 1318, 20 L.Ed.2d 255 (1968) ("a witness is not `unavailable' for purposes of the . . . exception to the confrontation requirement unless the prosecutorial authorities have made a good-faith effort to obtain his presence at trial"). Second, the out-of-court statement must be supported by indicia of trustworthiness. Roberts, 448 U.S. at 65, 100 S.Ct. 2531. Accord Mancusi v. Stubbs, 408 U.S. 204, 216, 92 S.Ct. 2308,33 L.Ed.2d 293 (1972). These fact-based determinations are entrusted to the sound discretion of the trial court. Nolen v. State,469 So.2d 1326, 1328 (Ala.Crim.App. 1985).
In Roberts, 448 U.S. at 75-76, 100 S.Ct. 2531, the Supreme Court held that an out-of-court statement of an absent witness was admissible. The prosecution presented the testimony of one person, the mother of the witness, who stated that she could not find or contact the witness, and presented evidence that the prosecution had made several unsuccessful attempts to subpoena the absent witness. Id.
The Supreme Court quoted portions of the opinion of the state court of appeals, which had held that the prosecution had not sufficiently proved a good-faith effort to procure the witness:
 "`[W]e have no witness from the prosecution to testify . . . that no one on behalf of the State could determine [the absent witness's] whereabouts, [or] that anyone had exhausted contact with [a] social worker
[who had seen the witness].' Unavailability *Page 136 
would have been established, the court said, `[h]ad the State demonstrated that its subpoenas were never actually served on the witness and that they were unable to make contact in any way with the [absent] witness. . . . Until the [defendants'] voir dire, . . . the State had done nothing, absolutely nothing, to show the Court that [the absent witness] would be absent because of unavailability, and they showed no effort having been made to seek out her whereabouts for purpose of trial.'"
Id. at 60, 100 S.Ct. 2531 (emphasis added) (citation omitted). Despite the prosecution's failure to produce testimony from a member of the prosecution team, and despite other purported deficiencies, the Supreme Court held that the prosecution had sufficiently proved a reasonable good-faith effort by subpoenaing the absent witness and by asking the absent witness's mother about her whereabouts. Id. at 76, 100 S.Ct. 2531. The Supreme Court noted that although the prosecution could have followed up with the social worker by telephone, it was not reasonably required to do so. Id. Thus, the Supreme Court held that the testimony of one witness, who was not a member of the prosecution team, was sufficient to support the admission of the prior testimony of the absent witness, even though all the follow-up leads to find the absent witness had not been exhausted.
In this case, not only did the State present more evidence of a good-faith effort to secure the witness than did the prosecution team in Roberts, it also presented evidence that Roberts
expressly held goes beyond the requirements of the Confrontation Clause.[3] As the prosecution did in Roberts, 448 U.S. at 76,100 S.Ct. 2531, the State subpoenaed the absent witness in this case without success. As the prosecution did in Roberts, id. at 75, 100 S.Ct. 2531, the State talked with various members of the absent witness's family in an effort to determine his whereabouts for trial. The State's investigator also talked to people who lived in Williams's neighborhood, Williams's probation officer, a utility company, and the police, in an effort to find Williams. Prior to trial, when the investigator discovered that Williams was wanted by the police, he had a "hold" put on Williams so that if the jail authorities incarcerated Williams they would contact the investigator. When Williams was arrested, however, the juvenile authorities inadvertently released him before contacting the investigator.[4] *Page 137 
Further, unlike the prosecution in Roberts, the State's investigator made follow-up telephone calls in an effort to track down Williams on the day before trial. Moreover, unlike the prosecution in Roberts, the State took the additional step of placing its investigator on the stand for examination and cross-examination. Although the State could have placed one more telephone call or could have sought to obtain a warrant for Williams's arrest, "the great improbability that such efforts would have resulted in locating the witness, and would have led to [his] production at trial, neutralizes any intimation that a concept of reasonableness required their execution." Roberts,448 U.S. at 76, 100 S.Ct. 2531. Thus, the State more than met its burden, as defined by the Supreme Court in Roberts, to show a reasonable good-faith effort to locate the absent witness.
The State also met its burden under the second prong of the Confrontation Clause test of admissibility by showing that Williams's out-of-court testimony was supported by indicia of trustworthiness. As with the absent witness's prior statement inRoberts, 448 U.S. at 71-73, 100 S.Ct. 2531, Williams's prior statement was given in open court at a preliminary hearing, and defense counsel was given the opportunity to cross-examine him. As with the defense counsel in Roberts, id. at 71,100 S.Ct. 2531, Scroggins's defense counsel took advantage of the preliminary hearing to ask Williams questions pertinent to the issue sat trial. Defense counsel thoroughly cross-examined Williams about Scroggins's shooting the victim and about Scroggins's actions immediately thereafter. Thus, as in Roberts, the preliminary hearing testimony of the absent witness in this case was supported by indicia of trustworthiness ample under theSixth Amendment's Confrontation Clause to support its admissibility. Accordingly, the trial court did not abuse its discretion in admitting the prior testimony of Williams.
 II. Application of Ohio v. Roberts in Johnson v. State
The majority states that the Court of Criminal Appeals in"Johnson v. State[, 623 So.2d 444, 447-48 (Ala.Crim.App. 1993)], set a high standard for proving that the State exercised due diligence in its attempt to procure the presence of a witness." 727 So.2d at 134. The majority states that in Johnson
the State sufficiently proved the unavailability of the witness by presenting the testimony of multiple witnesses and evidence of extensive follow-up efforts. 727 So.2d at 127. The majority then concludes that because the State, in this case, presented the testimony of only one person and did not follow up by seeking a warrant for Williams's arrest, it failed to meet the heightened Confrontation Clause standard set in Johnson. I do not agree thatJohnson modified the admissibility standard established by the Supreme Court in Roberts.
The sum total of the Johnson court's legal analysis of the admission of testimony from the absent witness in that case is as follows:
 "A party seeking to introduce a witness's testimony from a prior proceeding . . . must establish the unavailability of the witness and the reasons therefor. Lamar v. State, 578 So.2d 1382 (Ala.Crim.App. 1991), cert. denied, Ex parte Lamar, 596 So.2d 659 (Ala. 1991). This predicate is fulfilled when the party offering the evidence establishes that it has exercised due diligence in obtaining the witness, but without success. See Matkins v. State, 521 So.2d 1040, 1041-42 (Ala.Crim.App. 1987).
 "The sufficiency of proof for establishing the predicate of unavailability is left to the sound discretion of the trial court. Nolen v. State, 469 So.2d 1326, 1328
(Ala.Crim.App. 1985). Here, the trial court ruled that the State had exercised due diligence in trying to procure the witness. The trial court made this determination after a thorough examination of the matter. We cannot hold that the trial court abused its discretion."
Johnson, 623 So.2d at 447-48.
This language quoted from Johnson does not purport to set, establish, modify, or replace any standard. Instead, in Johnson
the Court of Criminal Appeals cites Matkins, 521 So.2d at 1041, that expressly relied on the standard established in Roberts,448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597, which struck the balance between the competing interests of the criminal defendant and the People. It would be strange indeed, for Johnson, which ultimately relied on Roberts, to silently establish a new multiple-witness/follow-up exhaustion *Page 138 
standard that the facts in Roberts itself would not meet. At most, Johnson is an application of the federal standard to facts that were more than sufficient to meet that standard.
By the majority's logic, a holding, for example, that video-tape and eyewitness testimony is sufficient evidence to support a conviction of a criminal offense would set a heightened evidentiary standard requiring the reversal of all future convictions that were not equally supported by videotape and eyewitness testimony. This has never been the law. Compare McLeodv. State, 627 So.2d 1066 (Ala.Crim.App. 1993) (upholding a defendant's conviction on a controlled substance offense based on videotape and eyewitness testimony), with Gary v. State,473 So.2d 604 (Ala.Crim.App. 1985) (upholding a defendant's conviction on a controlled substance offense based on the physical proximity of the defendant and the defendant's possessions to the controlled substance). Thus, the Court of Criminal Appeals did not expressly set a new Sixth Amendment standard in Johnson, and the argument that it implicitly did so is untenable.
Ultimately, it is the Supreme Court of the United States, and not the Court of Criminal Appeals, or this Court, that sets the standard for enforcing the Sixth Amendment to the Constitution of the United States. See Martin v. Hunter's Lessee, 14 U.S. (1 Wheat.) 304, 4 L.Ed. 97 (1816). The majority's interpretation of the Confrontation Clause to require multiple witnesses and the exhaustion of almost all follow-up opportunities is a dramatic departure from the interpretation of that Clause by the Supreme Court of the United States. The majority effectively restrikes the balance established in Roberts for the admissibility of the preliminary-hearing testimony of an absent witness, favoring the interest of the criminal defendant at the expense of the interests of the People.
I dissent.
HOOPER, C.J., and MADDOX, and HOUSTON, JJ., concur.
[1] The Due Process Clause provides:
 "No State shall . . . deprive any person of life, liberty, or property, without due process of law . . . ."
U.S. Const. amend. XIV, § 1.
[2] The Federal Rules of Evidence provide in pertinent part:
 "Hearsay is not admissible except as provided by these rules or by other rules prescribed by the Supreme Court pursuant to statutory authority or by Act of Congress."
Rule 802, Fed.R. Evid.
 "The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:
 "(1) Former Testimony. — Testimony given as a witness at another hearing of the same or a different proceeding, or in a deposition taken in compliance with law in the course of the same or another proceeding, if the party against whom the testimony is now offered . . . had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination."
Rule 804(b), Fed.R. Evid.
 "`Unavailability as a witness' includes situations in which the declarant —
". . . .
 "(5) is absent from the hearing and the proponent of a statement has been unable to procure the declarant's attendance . . . by process or other reasonable means."
Rule 804(a), Fed.R. Evid.
[3] In this case, the Alabama Rules of Evidence, instead of the Federal Rules of Evidence, were applicable. For purposes of Confrontation Clause analysis in this case, however, there are no substantive differences between the rules. The Alabama Rules of Evidence provide in pertinent part:
 "Hearsay is not admissible except as provided by these rules, or by other rules adopted by the Supreme Court of Alabama or by statute."
Rule 802, Ala. R. Evid.
 "The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:
 "(1) Former Testimony. Testimony of a witness, in a former trial or action, given (A) under oath, (B) before a tribunal or officer having by law the authority to take testimony and legally requiring an opportunity for cross-examination, (C) under circumstances affording the party against whom the witness was offered an opportunity to test his or her credibility by cross-examination, and (D) in litigation in which the issues and parties were substantially the same as in the present cause."
Rule 804(b), Ala. R. Evid. See II Charles W. Gamble, McElroy'sAlabama Evidence § 245.07(4)(c) (5th ed. 1996) (stating that a preliminary hearing in a criminal proceeding qualifies as a "former trial or action" under Rule 804(b)).
 "`Unavailability as a witness' includes situations in which the declarant —
 "(5) is absent from the hearing and the proponent of the statement has been unable to procure the declarant's attendance . . . by process or other reasonable means."
Rule 804(a), Ala. R. Evid.
[4] I note that there was no evidence that the jail officials who released Williams were aware that Williams was scheduled to testify at the upcoming trial of Scroggins. Compare Motes v.United States, 178 U.S. 458, 20 S.Ct. 993, 44 L.Ed. 1150 (1900) (reversing the admission of prior testimony of an absent witness where a member of prosecution team released the witness, who was under indictment, under his own recognizance with full knowledge that he would be needed as a witness) with United States v.Mathis, 550 F.2d 180, 182 (4th Cir. 1976) (upholding the admission of the prior testimony of an absent witness where "there [was] no evidence that the prison official who released [the witness] knew that [the witness] would be needed as a witness"), cert. denied, 429 U.S. 1107, 97 S.Ct. 1140,51 L.Ed.2d 560 (1977).