STATE of Maine

v.

**John O. SMITH.**

Supreme Judicial Court of Maine.

Argued May 6, 1980.

Decided June 9, 1980.

Michael D. Seitzinger (orally), Charles K. Leadbetter, and Herbert Bunker, Jr., Asst. Attys. Gen., Augusta, for plaintiff.

E. Paul Eggert (orally), Daniel G. Lilley, Portland, for defendant.

Before McKUSICK, C. J., and WERNICK, GODFREY, NICHOLS, GLASSMAN and ROBERTS, JJ.

McKUSICK, Chief Justice.

Defendant appeals his conviction for manslaughter, 17–A M.R.S.A. § 203(1)(A) (Supp.1979), following trial before a Superior Court jury in Lincoln County, to which venue had been changed on his motion.

Smith is the co-defendant of Douglas Goodall, who was earlier convicted of the same offense and whose conviction this court affirmed in *State v. Goodall*, Me., 407 A.2d 268 (1979). On appeal, defendant Smith mounts his principal attack upon the presiding justice's ruling admitting in evidence under the hearsay exception of M.R.Evid. 804(b)(1),[1] the prior testimony given at defendant's preliminary examination by a witness who was unavailable at trial. We find that the prosecution laid the proper foundation for admitting the prior testimony and that its admission in evidence did not violate defendant's right of confrontation. Finding no reversible error in Smith's trial, we affirm his conviction.

A grand jury indictment charged that on or about December 23, 1978, defendant and Douglas Goodall caused the death of Roland Grant by engaging in "conduct which manifested a depraved indifference to the value of human life," 17–A M.R.S.A. § 201(1)(B) (murder). The "bizarre train of events leading to Mr. Grant's death" is recounted in this court's opinion in Goodall's appeal, 407 A.2d at 271–73. After a trial separate from that of Goodall, Smith was found guilty of the lesser included offense of criminally negligent manslaughter, *id.* § 203(1)(A), and was sentenced to 18 years at the Maine State Prison.

## I.

Well before the start of Smith's trial, the prosecution alerted both the court and defense counsel to the fact that Sharon Silver, an important prosecution witness,[2] had broken her promise that she would voluntarily return to Maine in order to testify at trial. Subsequently, the prosecution made persistent and diligent efforts to locate Miss Silver

---

1. M.R.Evid. 804(b)(1) reads in full as follows:
 (b) Hearsay exceptions. The following [is] not excluded by the hearsay rule if the declarant is unavailable as a witness:
 (1) *Former testimony.* Testimony given as a witness at another hearing of the same or a different proceeding, or in a deposition taken in compliance with law in the course of the same or another proceeding, if the party against whom the testimony is now offered, or in a civil action or proceeding, a predecessor in interest, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination.

2. Miss Silver testified at the joint preliminary examination, or "probable cause hearing," of both defendants, *see* M.R.Crim.P. 5(c). She also testified at both of Goodall's trials (the first ending in a mistrial), but that testimony is not at issue here.

and to obtain her attendance at trial, but after the State presented its final witness at trial, the prosecutor informed the court that all reasonable efforts had failed. He thereupon sought to read into the record portions of her testimony from the transcript of the preliminary examination held before the District Court. After giving considerable thought to the matter, the court denied defendant's motions for a continuance, for a mistrial, and for exclusion of the evidence; and both sides in turn were permitted to read to the jury, from Silver's prior testimony, those portions agreed upon by both counsel as relevant and material either to the prosecution or the defense.

■ The defense now contends [3] that the admission of Sharon Silver's prior testimony was error because the State failed to establish that defendant had "had an opportunity and similar motive to develop the testimony by . . . cross . . . examination" at the preliminary examination.[4] Although defendant's argument is directed primarily at the alleged failure of the proffered testimony to comply with the foundational requirements of Rule 804(b)(1), we review his claim of error with a keen awareness that the admission at his trial of hearsay evidence necessarily implicates defendant's right "to be confronted with the witnesses against him" guaranteed by the Sixth Amendment to the federal constitution and by its counterpart, article I, section 6 of the Maine Constitution.[5] Defendant argues that because a preliminary examination is different in purpose from a criminal trial and imposes a lesser burden of proof on the State, the prior hearing had not provided a

"similar motive" for cross-examination, and that because at that early stage of the proceeding defendant had not had the benefit of discovery and had not developed his trial strategy, he had not been given a *meaningful* "opportunity" to develop the witness' testimony.

The presiding justice was correct in ruling that Miss Silver's preliminary examination testimony satisfied the foundational requirements of Evidence Rule 804(b)(1). At the outset we reject the proffered *per se* rule that a preliminary examination can never provide a defendant with a "similar motive" or meaningful "opportunity" to develop the witness' testimony. There is no indication that the drafters of our rules of evidence intended to bar all preliminary examination testimony, regardless of the specific circumstances of the particular case in which it is offered. *See* R. Field & P. Murray, *Maine Evidence* § 804.2, at 237 (1976). *Cf.* Advisory Committee's Note to Federal Evidence Rule 804, reproduced in 4 J. Weinstein & M. Berger, *Weinstein's Evidence*, at 804–19 (1979). Courts in other jurisdictions have universally ruled against any *per se* rejection of preliminary examination testimony. *See* J. Weinstein & M. Berger, *supra* ¶ 804(b)(1)[02], at 804–60; 11 *Moore's Federal Practice* § 804.04[2] (1976); McCormick, *Evidence* § 255, at 616 & n. 20 (2d ed. 1972). *See generally* 5 Wigmore, *Evidence* § 1387 (Chadbourn rev. 1974).

■ Conversely, there exists no *per se* rule that prior testimony at a defendant's preliminary examination is always admissible at trial upon merely a showing that the

---

**3.** Defendant has abandoned any claim that Miss Silver was not shown to be "unavailable as a witness." *See* M.R.Evid. 804(a)(5).

**4.** On appeal, defendant first argues that the court erred in not explicitly stating its findings of "opportunity and similar motive" required by M.R.Evid. 804(b)(1), even though defense counsel made no request for such findings. Here, as in general, the absence of explicit findings in no way hampers our ability to review the claim of error. "In making his ruling on the preliminary question of admissibility, *see* M.R.Evid. 104(a), the justice must be taken to have made all the findings . . . necessary to comply with [the] Rule." *State v. Hafford,*

Me., 410 A.2d 219, 220 (1980). We are not here involved with a finding of constitutional fact necessary for the admissibility of evidence, as we were recently in *State v. Smith,* Me., 415 A.2d 553, 558 (1980) (judge's finding of constitutional fact of voluntariness of confession must "appear from the record with unmistakable clarity").

**5.** Because of the demands of the Confrontation Clause, the presiding justice should be rigorous in demanding that a prosecutor offering former testimony clearly establish the necessity therefor by demonstrating the unavailability of the declarant.

witness has become unavailable. Rather, the trial court must examine the circumstances of each case to determine *ad hoc* whether the defendant in fact had the "opportunity and similar motive" required for admissibility. At the preliminary examination preceding the indictment of defendant Smith, despite the fact that full discovery of the state's case had not yet been afforded to defendant, his right to cross-examine Miss Silver provided him with an adequate opportunity to develop her testimony. His counsel and that of his co-defendant engaged in an extensive cross-examination covering fully 56 pages of the transcript (in contrast with only 43 pages of her direct testimony). Further, we are not convinced that because the standard of proof at the hearing ("probable cause") was different from that applicable at trial (proof "beyond a reasonable doubt"), defendant did not have a "similar motive" to discredit Miss Silver's story of Smith's and Goodall's criminal activity. It is not necessary that defendant have had the identical motive. *Cf. State v. Rich*, Me., 395 A.2d 1123, 1129 & n. 8 (1978) (former testimony at bail hearing held admissible at trial). Miss Silver's prior testimony was given under circumstances satisfying Evidence Rule 804(b)(1).

 As to defendant's assertion that his constitutional right of confrontation erects an absolute barrier to the admission of preliminary examination testimony, a six-member majority of the United States Supreme Court, with only one justice dissenting, conclusively rejected any such view in *California v. Green*, 399 U.S. 149, 165–68, 90 S.Ct. 1930, 26 L.Ed. 489 (1970). When assessing in any particular case a claim that the admission at trial of hearsay evidence was violative of a defendant's right of confrontation,

> we focus primarily on whether circumstances surrounding the hearsay provided sufficient information to the jury to assess its reliability.

*State v. Cugliata*, Me., 372 A.2d 1019, 1030 (1977), citing *Mancusi v. Stubbs*, 408 U.S. 204, 213, 92 S.Ct. 2308, 33 L.Ed.2d 293 (1972). The testimony of Miss Silver at defendant's preliminary examination was given under oath and in a formal proceeding presided over by a District Court judge. Although counsel on appeal has asserted that defense counsel generally employ a more cautious cross-examination strategy at probable cause hearings, the record in the instant case shows that counsel in fact did not "lay off" this witness; nor does defense counsel suggest in what if any respects he could have cross-examined Miss Silver any more effectively at trial. The extensive cross-examination was itself read to the jury so far as relevant; it constituted an additional aid to the jury in assessing the reliability of Miss Silver's testimony on direct. In the circumstances of this case, Miss Silver's former testimony given at a court hearing where defendant was represented by counsel who, together with Goodall's counsel, engaged in thorough cross-examination was properly admitted at defendant's subsequent trial upon a clear demonstration of her unavailability. Admission of that testimony did not violate defendant's constitutional right to be confronted by the witness against him; the jury was "provided sufficient information . . . to assess [the] reliability" of the prior testimony.

## II.

Defendant contends that the Superior Court erred in refusing to instruct the jury on the lesser crimes of aggravated assault, assault, and reckless conduct, which he asserts are lesser *included* offenses of the "depraved indifference" murder for which he was indicted. That argument was specifically considered and rejected in *State v. Goodall, supra* at 279–80, where this court concluded:

> [W]hereas the inquiry in a prosecution for "depraved indifference" murder is, as this court explained in *Woodbury [State v. Woodbury*, Me., 403 A.2d 1166 (1979)]*, an *objective* one and requires no evidence whatever of the defendant's *subjective* state of mind, the other three offenses *do* require an affirmative showing by the State of the defendant's subjective state of mind. Accordingly, those other of-

fenses are not lesser included offenses of "depraved indifference" murder; proof of a violation of section 201(1)(B) does not "necessarily include" proof of aggravated assault, simple assault, or reckless conduct under the *Leeman [State v. Leeman,* Me., 291 A.2d 709 (1972)] test. The requested instructions were properly refused.

*Id.* at 280 (emphasis in original; footnotes omitted).

### III.

■ Defense counsel finally contends that the presiding justice should have instructed the jury that they could consider whether defendant's self-induced intoxication raised a reasonable doubt as to the culpable mental state required for liability as a principal to the substantive offense of "depraved indifference" murder. 17–A M.R.S.A. § 58–A(1) provides that "[i]ntoxication is not a defense unless it establishes a reasonable doubt as to the existence of an element of the offense." Defendant concedes that evidence of self-induced intoxication, *id.* § 58–A(3)(B), is available to raise a reasonable doubt as to the existence of the requisite culpable mental state only if that state is either intention or knowledge, *State v. Barrett,* Me., 408 A.2d 1273 (1979), but he again asserts that "depraved indifference" murder requires a showing of intention or knowledge. As we have already noted above, to convict for "depraved indifference" murder does not require a showing of subjective intention or knowledge on the part of defendant with respect to the killing or the depravity of his conduct. 17–A M.R.S.A. §§ 201(1)(B); 10(1), (2). His conviction may be based solely upon an objective assessment of the conduct that resulted in the victim's death. *State v. Lagasse,* Me., 410 A.2d 537 (1980); *State v. Goodall, supra; State v. Woodbury, supra.* Similarly, the "criminal negligence" that is the critical element in that type[6] of manslaughter for which defendant was convicted is measured by an objective standard, namely, "fail[ure]

to be aware of a risk" that involves "a gross deviation from the standard of conduct that a reasonable and prudent person would observe in the same situation." 17–A M.R.S.A. § 10(4); *see State v. Goodall, supra* at 280 n. 17. Defendant was not entitled to a charge on self-induced intoxication.

The entry must be:

Appeal denied.

Judgment of conviction affirmed.

All concurring.

---

**6.** In contrast to criminally negligent manslaughter, the offense of reckless manslaughter, 17–A M.R.S.A. § 203(1)(A), requires a subjec-

tive state of mind: the actor "consciously disregards a risk" that "involve[s] a gross deviation." *etc. Id.* § 10(3).