STATE

v.

Timothy HANNAGAN.

No. 83–423–C.A.

Supreme Court of Rhode Island.

March 27, 1984.

Dennis J. Roberts, II, Atty. Gen., Margaret R. Levy, Sp. Asst. Atty. Gen., Providence, for plaintiff.

Charles J. Rogers, Jr., Stephen A. Sarault, Providence, for defendant.

Before BEVILACQUA, C.J., and KELLEHER, WEISBERGER, MURRAY and SHEA, JJ.

## OPINION

KELLEHER, Justice.

A Superior Court jury has found the defendant, Timothy Hannagan (Hannagan), guilty of the crimes of embezzlement and filing of false documents with the Registry of Motor Vehicles. This jury trial marked the second time that Hannagan was tried on these charges. Earlier, another Superior Court jury had returned guilty verdicts on the embezzlement and false-document charges and a not guilty verdict on the false-pretenses charge. Thereafter, the justice presiding at the first trial granted Hannagan's motion for a new trial.

The charges arose after Hannagan, who in 1979 was a member of the Johnston police department, sold a 1973 Honda motorcycle for $700 to a friend of a fellow officer. Hannagan then escorted the purchaser to the state's Registry of Motor Vehicles, where he attended to certain details relative to the issuance of a title certificate, including the filing of an affidavit of loss of certificate of title. About a year later Louis LaFazia (LaFazia) filed a complaint with the Johnston police, claiming that although he had allowed Hannagan to use the cycle, he had never authorized its sale. As a result, the cycle was returned to LaFazia, and Hannagan was subsequently indicted as well as suspended from the Johnston police department.

At the second trial, LaFazia, the state's principal witness, as he was undergoing direct examination, informed the trial justice, "I'm having trouble standing * * *. I've got to get the air. * * * I don't feel good." These remarks came shortly after the state's counsel had indicated that she was considering asking to have the witness declared hostile. The trial justice declared the noontime recess and directed an officer to escort the witness "to wherever he has to go."

When the trial resumed in the afternoon, the state's attorney announced that LaFazia had been taken to his home in a "seriously ill condition" and would be unable to continue with his testimony. Consequently, the state asked that LaFazia be declared as an unavailable witness so that the state could then read back to the jury the testimony LaFazia had given at the first trial. Hannagan's counsel objected and, in a lengthy response, alluded to the pertinent case law. His efforts went for naught as the trial justice granted the state's motion.

In granting the state's request, the trial justice referred to what he had seen at the hearing "with my own eyes," and also observed, "I'm satisfied that he is not available to testify this afternoon or in the immediate future." The trial justice did acknowledge that if LaFazia "is not as critically ill as he appeared to me, he should be nominated for an Oscar." After the grant of the state's motion, the reading of the transcript was postponed while the state introduced evidence relating to the authenticity of the signatures which purportedly were those of LaFazia and Hannagan. The reading did not begin until sometime in the late afternoon.

The next day the reading of the transcript was interrupted by a defense offer of proof in which it was alleged that LaFazia, after having left the courthouse, was driven by the police to a nearby variety store where he had something to eat. There the witness allegedly described to the patrons how he had "fooled" the judge. Later, the police obligingly picked LaFazia up and drove him to a club where he could play cards and have a libation or two. In rejecting a request that a subpoena be issued for the missing witness, the trial justice said, "If it's true that he fooled the judge, all I can say is that he's not the first person who has fooled me, and I suppose he won't be the last * * *." The reading of the transcript proceeded notwithstanding defendant's protestations about his constitutional right to confront the witnesses against him.

The United States Supreme Court has stated that a defendant's Sixth Amendment right to confrontation is a fundamental right applicable to the states through the Fourteenth Amendment. *Pointer v. Texas,* 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965). Rhode Island's constitution provides a similar specific guarantee of a right to confrontation. It is found in article I, section 10. In *California v. Green,* 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970), the Court defined the threefold purpose of the confrontation requirement: (1) to ensure reliability by means of an oath; (2) to expose the witness to the probe of cross-examination; and (3) to permit the trier of fact to weigh the demeanor of the witness. *Id.* at 158, 90 S.Ct. at 1935, 26 L.Ed.2d at 497.

■ It is well settled, of course, that the right of confrontation is not absolute. In *Barber v. Page,* 390 U.S. 719, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968), the Court recognized that "there has traditionally been an exception to the confrontation requirement where a witness is unavailable and has given testimony at previous judicial proceedings against the same defendant which was subject to cross-examination by that defendant." *Id.* at 722, 88 S.Ct. at 1320, 20 L.Ed.2d at 258. However, because of the defendant's strong interest in confronting his accusers and the prosecutor's duty to provide a fair trial for the defendant and to protect the defendant's constitutional rights, the prosecutor's invocation of this exception cannot be granted routinely. Before a prosecutor can use prior recorded testimony and thus deprive a defendant of his right at trial to confront his accusers face to face, there must be a showing that the use of former testimony is a genuine necessity. *State v. Herrera,* 286 Or. 349, 355, 594 P.2d 823, 827 (1979).

■ The burden of proof on the issue of the unavailability of witnesses rests with the proponent of the evidence—in this case the state—and a showing of unavailability must be made by competent evidence. *People v. Stritzinger,* 34 Cal.3d 505, 516, 668 P.2d 738, 746, 194 Cal.Rptr. 431, 439 (1983).

■ The trial justice's visual diagnosis does not rise to such a level, for, as Aesop pointed out in "The Wolf in Sheep's Clothing," "Appearances are deceptive." Jacobs, *Fables of Aesop* at 94 (1902). To support a finding of a witness's unavailability on account of illness, we believe that such evidence must be presented by way of expert testimony, and the illness in question must exist to such a degree as to render the witness's attendance or his or her testimony relatively impossible and not merely inconvenient. *See People v. Stritzinger,* 34 Cal.3d at 516, 668 P.2d at 746, 194 Cal.Rptr. at 439. Only by insisting upon competent

proof of a witness's unavailability for the purposes of invoking the prior-testimony exception to the hearsay rule can we adequately ensure that the fundamental guarantees of confrontation and cross-examination of one's accusers will be preserved for an accused. *State v. Scholz,* 432 A.2d 763, 767 (Me.1981).

The defendant's appeal is sustained, the judgment of conviction appealed from is vacated, and the case is remanded to the Superior Court for a new trial.[1]

1. This case came before the court on an order to the state to show cause why defendant's appeal should not be summarily granted. Upon reflection, we believe that the issue presented is significant enough to require a full opinion.