**STATE of Maine**

**v.**

**Nicholas HASSAPELIS.**

Supreme Judicial Court of Maine.

Argued Jan. 11, 1993.

Decided Feb. 11, 1993.

Michael E. Carpenter, Atty. Gen., Donald W. Macomber (orally), Asst. Atty. Gen., Augusta, for the State.

E. Paul Eggert (orally), Mittel, Asen, Eggert & Hunter, Portland, for defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, COLLINS and RUDMAN, JJ.

RUDMAN, Justice.

Nicholas Hassapelis appeals from a judgment entered on his murder conviction, following a jury trial in the Superior Court (Oxford County, *Perkins, J.*). His sole contention on appeal is that the court erred by allowing the State to read to the jury a transcript of the deposition testimony of medical examiner Dr. Ronald Roy without first determining his unavailability as a witness at the time of trial. Because we conclude that the trial court's error was harmless beyond a reasonable doubt, we affirm the conviction.

On January 5, 1990, Hassapelis was indicted by the Cumberland County grand jury for intentionally or knowingly causing the death of James Monaldo in violation of 17–A M.R.S.A. § 201(1)(A) (1983).[1] Trial began on September 9, 1990. Because a juror had read a newspaper account of the case, however, a mistrial was granted. In preparation for retrial, the State moved pursuant to M.R.Crim.P. 15(a) for permission to take the deposition of Dr. Ronald Roy which motion was granted by the court (*Lipez, J.*) on February 28, 1991 stating, *inter alia:*

> In light of the burden and expense involved in securing Dr. Roy's testimony for two separate trials, the court will permit the taking of Dr. Roy's testimony by deposition, and the use of those depositions at the trials. The court refers to depositions because it will most likely be necessary to conduct separate depositions in light of the separate trials of the defendants.

The deposition was taken and the retrial began April 27, 1992, after the case was ultimately transferred to Oxford County. At the outset of trial, Hassapelis objected to the use of Dr. Roy's deposition without a showing by the State that Dr. Roy remained unavailable to testify. The State admitted that: "we did not make an effort to serve process on Dr. Roy in Canada or otherwise to obtain his attendance here separately for this trial ... [we] simply relied on the court's order indicating that this deposition would be admissible in this trial." The trial court reaffirmed the prior order of the court permitting the deposition testimony to be read to the jury without making its own finding of unavailability.

After the jury returned a guilty verdict, the court sentenced Hassapelis to 65 years in the custody of the Department of Corrections. This timely appeal followed.

I.

The State, first argues that Hassapelis's failure to include in the record a transcript of the pretrial hearing precludes us from considering the merits of Hassapelis's challenge to the use of Dr. Roy's deposition at trial. While it is true that Hassapelis bears the burden of providing us with an adequate record to permit a fair consideration of the issues on appeal, the State's contention is without merit. *See State v. Meyer*, 423 A.2d 955, 956 (Me. 1980). First, the record does contain the

---

1. Section 201 provides that "A person is guilty of murder if: (A) He intentionally or knowingly causes the death of another human being." 17–A M.R.S.A. § 201(1)(A) (1983).

pretrial order in its entirety. Second, this appeal focuses on whether the trial court erred in admitting the deposition at trial. Although the pretrial decision is relevant to the conduct of the trial court, a copy of the pretrial order sufficiently permits appellate inquiry into the court's findings. Of greater significance is the transcript of the trial, which is included as part of the record on appeal. Finally, Hassapelis does not contest the pretrial decision to allow the taking of Dr. Roy's deposition. Rather, he contests the admission of that deposition as evidence in the State's case-in-chief. Therefore, contrary to the State's assertion, we conclude that Hassapelis has met his burden of providing us with a record sufficient in content to permit a fair consideration of the issues. We turn, therefore, to the merits of Hassapelis's appeal; specifically, whether the trial court erred in admitting Dr. Roy's deposition testimony as to the cause of the victim's death without determining Dr. Roy's unavailability as a witness at the time of trial.

## II.

■ The use of a deposition at trial is governed by M.R.Crim.P. 15(e):

> At the trial or upon any hearing, a part or all of a deposition, so far as otherwise admissible under the rules of evidence, may be used if the court finds: That the witness is dead; or *that the witness is out of the State of Maine,* unless the court finds that the absence of the witness was procured by the party offering the deposition; or that the witness is unable to attend or testify because of sickness or infirmity; or that the party offering the deposition has been unable to procure the attendance of the witness by subpoena.

M.R.Crim.P. 15(e) (emphasis added). Under Rule 15(e), the court at the time of trial, before admitting a deposition, must make a finding that the witness is unavailable for any one of the four reasons expressly set forth in the Rule.[2] Unavailability at the time of the initial motion is irrelevant if the witness subsequently becomes available. "Whether the deponent is unavailable is to be determined at the time of the trial or hearing in the light of the circumstances then existing. That the court has earlier allowed a deposition to be taken creates no presumption that it is admissible." 2 Wright, *Federal Practice and Procedure,* § 245, at 25 (1982) (citing *United States v. Mann,* 590 F.2d 361, 366 (1st Cir.1978)).[3] Thus, that portion of the court's order authorizing, on February 28, 1991, the later use of Dr. Roy's deposition at trial, not held until April of 1992, was premature. Furthermore, its reliance on the "burden and expense involved in securing Dr. Roy's testimony" is inappropriate. "Burden and expense" are conspicuously absent from the list of considerations set forth in Rule 15. Therefore, although the court correctly permitted the initial taking of Dr. Roy's deposition, the subsequent use of that deposition could only be determined by an independent finding, at trial, that Dr. Roy was unavailable. Accordingly, the trial court's failure to make an independent finding at the time of trial was error.

## III.

Having determined that the trial court violated M.R.Crim.P. 15(e), we next consider whether, as urged by the State, the violation may be excused as harmless error. The appropriate standard that governs our harmless error inquiry, however, depends on whether a violation of the de-

---

**2.** As discussed in Part III of our opinion, this is not the only finding that the trial court must make. Despite its absence from the express language of Rule 15(e), the sixth amendment to the United States Constitution requires the trial court to find that the State made a good faith effort to procure the witness' attendance at trial. *See State v. Scholz,* 432 A.2d 763, 765 (Me.1981).

**3.** The fact that Rule 15(e) of the Federal Rules of Criminal Procedure contains a definition of unavailability different from Maine's Rule 15(e)

("unavailability is defined in Rule 804(a) of the Federal Rules of Evidence") is not particularly relevant to the issue of what point in time a deponent's availability is to be measured. Thus, under both the federal and Maine versions of Rule 15(e), a deponent's unavailability is to be determined at the time of trial. *See* 1 Cluchey & Seitzinger § 15.4, at IV–75 ("In order for the deposition to be admissible, the witness whose deposition is offered must be genuinely unavailable at the trial ...").

fendant's constitutional rights has taken place.[4] Because the trial court's error in the present case does implicate Hassapelis's constitutional right to confront all witnesses against him and, therefore, raises our level of scrutiny to whether that error was harmless beyond a reasonable doubt, it becomes necessary to identify precisely how Hassapelis's sixth amendment constitutional right has been violated. *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

The sixth amendment to the United States Constitution, made applicable to the states through the fourteenth amendment, provides, in pertinent part, that: "In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him...." U.S. Const. amend. VI.[5] "The Confrontation Clause provides two types of protection for a criminal defendant: the right physically to face those who testify against him, and the right to conduct cross-examination." *Pennsylvania v. Ritchie*, 480 U.S. 39, 51, 107 S.Ct. 989, 998, 94 L.Ed.2d 40 (1987). "It is the 'literal right to 'confront' the witness at the time of trial that forms the core of the values furthered by the Confrontation Clause.'" *State v. Twist*, 528 A.2d 1250, 1255 (Me.1987) (quoting *California v. Green*, 399 U.S. 149, 157, 90 S.Ct. 1930, 1934, 26 L.Ed.2d 489 (1970)). The essential purpose of the Confrontation Clause was expressed in *Mattox v. United States*, 156 U.S. 237, 15 S.Ct. 337, 39 L.Ed. 409 (1894), where the Supreme Court stated:

The primary object of the [Confrontation Clause of the sixth amendment] ... was to prevent depositions or *ex parte* affidavits, such as were sometimes admitted in civil cases, [from] being used against the prisoner in lieu of a personal examination and cross-examination of the witness in which the accused has an opportunity, not only of testing the recollection and sifting the conscience of the witness, but of compelling him to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief.

*Id.* at 242–43

Recognizing, however, that "[i]f one were to read [the Confrontation Clause] literally, it would require, on objection, the exclusion of any statement made by a declarant not present at trial ...," the United States Supreme Court set forth two prerequisites that must be established before statements made by unavailable declarants are admitted at trial. *See Ohio v. Roberts*, 448 U.S. 56, 63, 100 S.Ct. 2531, 2537, 65 L.Ed.2d 597 (1980). First, the prosecutor must sufficiently demonstrate the unavailability of the declarant. *Id.* at 65, 100 S.Ct. at 2538. Second, once the witness is shown to be unavailable, his statement is admissible only if it bears sufficient indicia of reliability. *Id.* Otherwise, "the [Confrontation] Clause would abrogate virtually every hearsay exception, a result long rejected as unintended and too extreme." *Id.* at 63, 100 S.Ct. at 2537.[6] Because we con-

---

4. Where constitutional violations are claimed to be harmless, a heightened standard applies, namely, that the error must be harmless beyond a reasonable doubt. *See Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967). This standard is more strict than that used for errors which are not of constitutional magnitude. In the latter case, a "preserved error should be treated as harmless if 'the appellate court believes it highly probable that the error did not affect the judgment.'" *State v. True*, 438 A.2d 460, 467 (Me.1981) (quoting R. Traynor, *The Riddle of Harmless Error* 35, 49–51 (1970)).

5. Similarly, the Maine Constitution guarantees: "In all criminal prosecutions, the accused shall

have a right ... To be confronted by the witnesses against him." Me.Const. art. I, § 6.

6. Due to the Supreme Court's repeated discussions of the Confrontation Clause in the context of the rule against hearsay, we should point out that the use of a deposition at trial, pursuant to M.R.Crim.P. 15(e), has been recognized as an independent hearsay exception.

Hearsay is not admissible except as provided by law or by these rules. The words "as provided by law" include applicable state and federal statutes, the Maine Rules of Civil Procedure and the Maine Rules of Criminal Procedure.

M.R.Evid. 802.

Moreover, one respected commentator has noted that the hearsay rule

clude that, by failing to sufficiently demonstrate the witness's unavailability, the State has not satisfied the first prerequisite, we need not reach the second level of analysis, i.e., whether the admitted deposition testimony bore sufficient indicia of reliability.

In order to satisfy the sixth amendment's requirement of unavailability, the State must demonstrate that it "made a good faith effort to obtain [the witness's] presence at trial." *State v. Scholz*, 432 A.2d 763, 765 (Me.1981) (quoting *Barber v. Page*, 390 U.S. 719, 724–25, 88 S.Ct. 1318, 1322, 20 L.Ed.2d 255 (1968)). "[A] witness is not 'unavailable' for purposes of the foregoing exception to the Confrontation requirement unless the prosecutorial authorities have made a good-faith effort to obtain his presence at trial." *Barber*, at 724–25, 88 S.Ct. at 1322. Furthermore,

What constitutes a "good-faith effort" is a question of reasonableness and depends upon the peculiar facts and circumstances of the given case. In any event, the good-faith standard is never satisfied by mere perfunctory efforts on the part of the State to procure the witness' presence. The good-faith effort must be "genuine and bona fide," *Government of the Virgin Islands v. Aquino*, 378 F.2d 540, 552 (3d Cir.1967), and exercised with "reasonable diligence and care," *United States v. Lynch*, 499 F.2d 1011, 1022–23 (D.C.Cir.1974).

*Scholz*, 432 A.2d at 765. Finally, "the demands of the Confrontation Clause require the trial court to be 'rigorous' in demanding prosecutorial evidence to satisfy its burden of proving unavailability of the declarant." *Id.* (citing *State v. Smith*, 415 A.2d 570, 572 n. 5 (1980); *United States v.*

*Mann*, 590 F.2d 361 (1st Cir.1978); 4 J. Weinstein & M. Berger, *Weinstein's Evidence*, ¶ 804(a)[01] (1979)). "[T]he prosecutor's efforts must be exercised with all due diligence and care, particularly where former testimony is sought to be offered against the accused." *Scholz*, 432 A.2d at 767. "Without this requirement there would lurk the possibility that the State would not make as vigorous an attempt to procure a witness's presence as it would have made, lacking the prior recorded testimony." *Id.*[7]

Although the trial court is granted broad discretion in determining whether a good faith attempt has been made, this record contains absolutely no evidence on which any trial court could base a finding of good faith. *See State v. Preston*, 521 A.2d 305, 307 (Me.1987) (citing *Scholz*, 432 A.2d at 766)). The fact that in reliance on an erroneous pretrial order the State failed to engage in a good faith effort to produce Dr. Roy at trial does not excuse it from satisfying its sixth amendment burden.

The State relies on the Supreme Court's holding in *Mancusi v. Stubbs*, 408 U.S. 204, 92 S.Ct. 2308, 33 L.Ed.2d 293 (1972), as apparently setting forth a per se rule that a witness is constitutionally unavailable, under the sixth amendment, when it is demonstrated that the witness resides outside of the United States. We disagree with the State's reading of *Mancusi* and refuse to adopt such a simplistic formulation of the Confrontation Clause's unavailability requirement.

In *Mancusi*, a witness had testified against the defendant at his Tennessee trial for murder and kidnapping. *Id.* at 208, 92 S.Ct. at 2310. Following the trial, the witness, a naturalized American citizen, re-

---

has the effect of excluding all evidence that qualifies as hearsay under Rule 801 unless it falls within an exception under Rules 803 and 804 or as provided elsewhere by law. Provisions of law for this purpose include the Maine Rules of Civil and Criminal Procedure. Examples are ... **M.R.Crim.P. 15(e), use of depositions.**

Field & Murray, *Maine Evidence* § 802.1 at 8–31 (1992) (emphasis added).

7. While the U.S. Supreme Court has, in some instances, downplayed the requirement of dem-

onstrating a declarant's unavailability, it has not done so in cases where prior testimony is offered in a criminal trial against the defendant. *State v. Twist*, 528 A.2d 1250, 1257 n. 9 (Me. 1987) (citing *United States v. Inadi*, 475 U.S. 387, 106 S.Ct. 1121, 89 L.Ed.2d 390 (1986)). The admission of a prior deposition under M.R.Crim.P. 15(e) is sufficiently analogous to the case of prior testimony that the requirement of unavailability still applies.

turned to his native Sweden to reside permanently. *Id.* at 209, 92 S.Ct. at 2311. Ten years later, after the defendant's conviction was overturned on federal habeas corpus grounds, the prosecution, in preparation for retrial, sent a subpoena to be served at the witness's last place of residence in this country, Texas. *Id.* It could not be served and the prosecution sought to admit the witness's testimony from the first trial. *Id.* At the trial, the State called the witness's son to testify that his father resided in Sweden. The Court rejected the defendant's contention that the prosecution had not undertaken good faith efforts to attempt to produce the witness at trial. The Court noted that "Tennessee ... was powerless to compel his attendance ... either through its own process or through established procedures." *Id.* at 212, 92 S.Ct. at 2313.

Although the level of effort exercised by the State in *Mancusi* was certainly not significant, it was still greater than that engaged in by the prosecution in the present case. Here the State never asked Dr. Roy if he was available to attend Hassapelis's trial. No subpoena was sent to his last known address. No witnesses were called to vouch for the unavailability of Dr. Roy. In short, "so far as this record reveals, the sole reason why [the witness] was not present to testify in person was because the State did not attempt to seek his presence. The right of confrontation may not be dispensed with so lightly." *Barber*, 390 U.S. at 725, 88 S.Ct. at 1322.

Moreover, the State may not assert that the reduced likelihood of success in producing Dr. Roy at trial relieves it of its obligation to make a good faith effort. "The possibility of a refusal [to come and testify] is not the equivalent of asking and receiving a rebuff." *Id.* at 724, 88 S.Ct. at 1322. (quoting *Barber v. Page*, 381 F.2d 479, 481 (10th Cir.1967) (*Aldrich, J., dissenting*)). "[T]he possibility of a defeat is not the equivalent of pursuing all obvious leads and returning emptyhanded." *Ohio v. Roberts*, 448 U.S. 56, 80, 100 S.Ct. 2531, 2546, 65 L.Ed.2d 597 (1980) (*Brennan, J., dissenting*). Therefore, we conclude that the State's failure to make any attempt to

produce Dr. Roy at Hassapelis's retrial violated his sixth amendment right to confront the witnesses against him.

Although the Supreme Court has concluded that certain constitutional violations do not lend themselves to a harmless error analysis, the sixth amendment right to confrontation has not been included among them. *See* 2 Cluchey & Seitzinger § 52.2 at IX–128. In *Delaware v. Van Arsdall*, 475 U.S. 673, 684, 106 S.Ct. 1431, 1438, 89 L.Ed.2d 674 (1986), the Supreme Court expressly concluded that "Confrontation Clause errors [are] subject to *Chapman* harmless-error analysis." *Id.*

▇▇▇ "Since *Chapman*, the Supreme Court has consistently made clear that it is the duty of a reviewing court to consider the trial record as a whole and to ignore errors that are harmless, including most constitutional violations." *United States v. Hasting*, 461 U.S. 499, 509, 103 S.Ct. 1974, 1980, 76 L.Ed.2d 96 (1983) (citations omitted). "[A]n otherwise valid conviction should not be set aside if the reviewing court may confidently say, on the whole record, that the constitutional error was harmless beyond a reasonable doubt." *Van Arsdall*, 475 U.S. at 681, 106 S.Ct. at 1436. (citations omitted). Furthermore,

> The harmless-error doctrine recognizes the principle that the central purpose of a criminal trial is to decide the factual question of the defendant's guilt or innocence ... and promotes public respect for the criminal process by focusing on the underlying fairness of the trial rather than on the virtually inevitable presence of immaterial error.

*Id.* (citations omitted). Dr. Roy's testimony as to the cause of death (gunshot wounds) was merely cumulative of other evidence presented by the State establishing the cause of death. We have previously relied on the cumulative nature of improperly admitted evidence in deeming trial errors harmless. *See State v. Aalto*, 576 A.2d 1364, 1365–66 (Me.1990); *State v. Collins*, 456 A.2d 362, 365 (Me.1983). The State presented other evidence sufficient to establish the cause of death. Windham Po-

lice Detective Ronald Ramsdell testified that he found a trail of blood leading from a gate area to the location in the woods where the victim's body was found. Lyndon Varney, a water district employee, testified that he discovered the victim's body under some bushes on the water district property in Windham. Maine State Police Forensic Chemist Ronald Kaufman testified that tests he performed revealed that there existed gunpowder residue around four holes in the front of the victim's jacket. Portland Police Detective Daniel L. Young testified that he learned from reading the autopsy report that the victim had been shot several times in the chest. From that evidence, the jury could have rationally inferred that the cause of death was multiple gunshot wounds. Accordingly, the erroneous admission of Dr. Roy's deposition testimony was harmless beyond a reasonable doubt. *See State v. Hassapelis*, 404 A.2d 232, 237–38 (Me.1979).

The entry is:

Judgment affirmed.

All concurring.